MITCHELL ET AL. *v.* FALTER ET AL. ETC.

[No. 18,631. Filed May 27, 1955. Rehearing denied June 28, 1955. Transfer denied November 15, 1955.]

*Stiles & Bayor,* of Gary, for appellants.

*Nichols & Nichols,* of Knox, *Thomas B. Dumas,* of Rensselaer, and *Ira C. Tilton,* of Valparaiso, for appellees.

ROYSE, J.—At all times hereinafter referred to appellants Mitchell were the owners of certain farm land in Porter County, Indiana. On or about March 1, 1948, said appellants entered into a written lease with Melvin Lenburg and Rena Lenburg, husband and wife. Pursuant to the terms of said lease it terminated on March 1, 1949 and said Lenburgs vacated said property on the last mentioned date. In the fall of 1948 Lenburgs planted 83 acres of wheat on said land. On February 28, 1949 the Lenburgs, by their written indenture, sold certain described personal property to appellants for the sum of $3500.00 The provisions of that instrument pertinent to the question before us are as follows:

> "THIS SALE IS made subject only to a first mortgage in favor of LaPorte Production Credit Association, which the Purchaser hereby as part of the consideration herein assumes and agrees to pay; it being understood that the sellers herein have been tenants on said farm during the past year, that their lease expires March 1st, 1949; that this Bill of Sale and the consideration herein is a full and complete settlement between the parties hereto on all of the property on said farm jointly owned by them fifty-fifty under said lease, *except that the sellers herein are to have the privilege to take their one-half of the corn and oats now on said farm and to have their one-half of the Eighty-three (83) acres of wheat now growing on said farm.*
>
> "THAT SAID sellers *are to have privilege to protect their one-half interest in said wheat in accordance with and pursuant to the lease heretofore entered into by and between the parties hereto."* (Our emphasis.)

On June 17, 1949 the Lenburgs, by their written instrument, sold the wheat on said land to appellees. That contract is as follows:

"No. 6                                              6/17 1949

"This is to certify that I, Melvin A. Lenburg have this day contracted and sold to LaCrosse Grain Company 1000 bushels of No. 2 wheat at $1.80 cents per bushel (60 lbs. per bushel) to be clean, sound and dry and to grade No. 2 to be delivered into LaCrosse Grain Company elevator or cribs at LaCrosse, Ind., on or before the 1st day of Sept. 1949.

"If damaged or inferior grain is delivered and accepted on this contract, the market difference at which such grain is selling under the contracted grade day of delivery shall be deducted from the contract price. Any extension of time to be a buyer's option. Any balance or overrun will be accepted only at the market price on day of delivery.

"I certify that this grain is in my possession and free of all liens and incumbrances.

Melvin Lenburg   Rena Lenburg

"Received of LaCrosse Gr. Co.
Eighteen hundred Dollars
to apply on this contract.

LaCrosse Gr. Co./A. R. Falter

Form 10 Duplicating. Manufactured for and sold by Grain & Feed Journals Consolidated, Chicago, Ill."

Appellees subsequently agreed with the Lenburgs that they would transport the wheat from the farm to the elevator. When the wheat was ripe and ready for harvest appellees went to the farm with a truck but appellants Mitchell refused to permit them to have the wheat. On or about July 28, 1949 Mitchells sold all of the wheat raised on the farm to the appellant Porter County Farm Bureau Co-operative Association, Inc.

(hereinafter referred to as Co-operative) for $3739.69. Appellees informed the manager of the Co-operative of their interest in the wheat before Co-operative paid Mitchell. On July 18, 1949 appellees wrote appellant William Mitchell the following letter:

"Wm. Mitchell
Hobart, Ind.

"We have a chattel mortgage on Melvin Lenburg's wheat grown on your farm. Please see that the check for his one half (½) is made payable to Melvin Lenburg and LaCrosse Gr. Co.

LaCrosse Gr. Co.
A. R. Falter"

Subsequently appellees brought this action in the Porter Circuit Court against appellants for one-half of the price appellants received from the sale of said wheat. Issues were made up with the answers of the parties in four paragraphs and the reply of appellees to affirmative paragraphs of answer. Venue was changed to the Jasper Circuit Court. Trial to the court resulted in finding and judgment for $2171.15 in favor of appellees. The error assigned here is the overruling of appellants' motion for a new trial. We proceed to a consideration of the specifications of that motion not waived in the order presented by the briefs of the parties.

Appellants first contend the complaint is fatally defective in that it does not state a cause of action in conversion, the theory upon which the cause was tried, and accordingly does not authorize a recovery. Where, as in this case, a defendant files answer without filing a demurrer, he waives all defects in the complaint except that of jurisdiction of the subject-matter. Sec. 2-1011, Burns' 1946 Replacement; Flanagan, Indiana Pleading and Procedure, §147,

p. 202; Lowe's Revision of Works' Indiana Practice, Vol. 1, §14.49.

Appellants assert the decision of the court is not sustained by sufficient evidence and is therefore contrary to law. First, they say "A tenant under a lease which provides a definite period of tenure is not entitled to crops which do not mature until after the termination of the lease, because, if it is certain at the time when he sows how long the tenancy will continue and it is plain that before it ceases he cannot reap that which he sows, then it is his own folly if he sows." In support of this proposition they cite a number of authorities which generally sustain their contention. Among these is the recent decision of this court in *Nash* v. *Thomas* (1953), 123 Ind. App. 256, 110 N. E. 2d 355. However, as indicated in that case there is an exception to this general rule, viz., where at the time of the cancellation an agreement between the landlord and tenant is made reserving in the tenant his interest in the growing crops, then the above rule does not apply. We are of the opinion that pursuant to the terms of the bill of sale hereinbefore set out the Lenburgs retained their title to one-half the wheat growing on said farm.

Second, appellants assert "In a contract to sell a growing crop of wheat, where some acts, as to ascertain the identity, quality, quantity, the setting it apart, marking it, putting it in the condition which the terms of the contract require, the delivery to the vendee, the payment of the purchase price, or similar acts remain to be done, the title to the wheat does not pass to the vendee until such acts to be done are consummated."

In the case of *Ax et al.* v. *Schloot et al.* (1946), 116 Ind. App. 366, 64 N. E. 2d 668, relied on by both of

the parties herein, this court was squarely confronted with and recognized the general rule contended for by appellants. However, in holding this rule not applicable in that case we said:

> "The evidence discloses that there was an 80-acre field of growing corn and a 50-acre field of growing soybeans on the Schloot farm at the time he made his contract with the appellants for its sale. He owned an undivided one-half of such crops and there were no other fields of corn or soybeans on the place. The identity of the crops cannot be mistaken and the owner's title to an undivided one-half thereof was capable of and subject to transfer. There remained nothing further for the owner to do to meet the terms of his agreement.
>
> The appellants were to take title to such crops as they then were and subject to the risks of a crop failure. They were to acquire all the owner's interest in a certain and clearly identified thing, as such interest then existed, and designation of the quality or quantity of the corn and soybeans when harvested was wholly nonessential to pass title."

In this case the record discloses there were 83 acres of wheat planted on the farm rented by appellants to the Lenburgs; that the farm rented by the Lenburgs was the only farm that the latter rented and the only farm on which there was any wheat. Under the terms of the contract the Lenburgs owned an undivided one-half of said wheat. In our opinion these facts were sufficient to establish the wheat in controversy was the wheat retained by Lenburgs in their agreement with appellants.

Appellants further assert the contract between the Lenburgs and appellees was an executory contract and the wheat remained the property of the Lenburgs until the contract was executed.

The question of whether a contract of sale is an actual sale or merely an executory agreement is generally a question of fact which is determined from all of the terms and stipulations of the agreement. *Lester* v. *East* (1875), 49 Ind. 588.

Our Uniform Sales Act, §§58-202, 203, Burns' 1951 Replacement, provides in part as follows:

§58-202—"Property in specific goods passes when parties so intend. (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

§58-203—"Rules for ascertaining intention. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

"Rule 2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done. . . .

". . . Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

The written contract between the Lenburgs and appellees provided the former were to deliver the wheat to the elevator of the latter. " . . . the time, manner or place of delivery mentioned in a written contract of sale may be changed by a subse-

quent oral agreement." 46 Am. Jur., p. 471, 472 (Sales) §287. The evidence is undisputed that at the time the wheat became ready for harvest appellees agreed to transport the wheat from the farm to their elevator. However, in our opinion the question of whether or not this was an executory contract is not material to our decision. The contract relied on by appellees was with the Lenburgs. Appellants were not parties to it and we know of no rule of law which would give them any right to construe the agreement those parties made. Furthermore, we believe appellants are estopped to set up as defense to appellees' action that the title to the wheat did not pass from Lenburgs to appellees since the only reason title did not pass was the failure of Lenburgs to deliver the wheat to appellees. This failure of delivery was caused by the fact appellants converted the wheat and refused to deliver it to appellees.

> "Generally speaking a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is indirectly contrary to or inconsistent with one previously assumed by him, at least where he had or was chargeable with, full knowledge of the facts and another will be prejudiced by his action. . . . *This principle operates to preclude one who prevents a thing from being done from availing himself of the non-performance which he has himself occasioned.*" 19 Am. Jur., (Estoppel), Sec. 50. (Our emphasis).

Appellants next contend appellees have wholly failed to show a tortious conversion, or that they had the right to the immediate possession thereof. In support of this contention they assert by the terms of the lease appellees were bound to

(1) farm said premises in a good and farmlike manner;

(2) raise the greatest amount of crops that the nature of the soil and season would permit;

(3) care for all the growing crops in a good farmlike manner;

(4) harvest all crops in proper season;

(5) combine, husk and prepare for delivery and deliver all of the crops and produce;

(6) until delivery to take proper care of landlord's share of crops;

(7) furnish all labor, horses, farm machinery, fuel for the operation of all mechanical devices and to keep said machinery in good repair and pay for the repairs of all machinery;

(8) cut and keep down weeds, briers, bushes, thistles and obnoxious weeds growing on premises demised;

(9) furnish all labor and farm machinery for the purpose of farming the land and marketing all crops;

(10) pay one-half of the taxes and insurance on crops grown upon premises;

(11) pay one-half of the cost for binding twine used in the harvesting of any crops.

Certainly the appellees had no better title to the wheat than did the Lenburgs. And in this action appellants could have availed themselves of every defense they would have had if the Lenburgs brought this action.

The record herein discloses the appellant Porter County Farm Bureau Co-operative Association, Inc. filed answer in one paragraph in denial, and the appellants Mitchell and Mitchell filed answer in four paragraphs, the first paragraph being in denial; the second basing ownership on the fact that they were the landlord; the third based on a release by the appellees; and the fourth based on fraud and a conspiracy to cheat appellants Mitchell by Lenburg

and Lenburg and appellees. The bill of exceptions is completely silent as to any effort made by Lenburg and Lenburg to harvest the wheat, any effort made by appellees to harvest the wheat and any breach of the contract between appellants Mitchell and Lenburg and Lenburg other than the fact the appellants Mitchell harvested the wheat and kept the entire proceeds therefrom. The appellants cannot urge for the first time in this court a proposition of fact which was not presented to the trial court and upon which no evidence was introduced. *Klukas* v. *Yount* (1951), 121 Ind. App. 160, 98 N. E. 2d 227; *Moore* v. *Shockley* (1860), 15 Ind. 360.

Appellants next contend the decision is contrary to law because of a lack of evidence that appellees suffered any loss or damages as the consequence of their complained-of conduct. In support of this they assert (1) there is a total lack of proof of the value of the wheat; (2) the evidence wholly fails to establish ownership in appellees; (3) the evidence shows appellees never paid any money or parted with anything of value for the wheat; (4) there is no basis for the judgment in favor of appellees for $1730 with interest at the rate of six percent from July 29, 1949.

Appellant William Mitchell introduced in evidence a statement from Co-operative showing it purchased 129,700 pounds of this wheat and paid therefor $3,739.69. At sixty pounds per bushel this would be a total of a little more than 2161 bushels. In our opinion this is evidence of the value of the wheat. What we have heretofore said disposes of the question of appellees' title in this wheat. The record discloses the Lenburgs were indebted to the appellees and it was agreed among them that the proceeds from the sale of wheat would be applied to this indebtedness. While there is some confusion in the record as to whether Lenburgs

were actually credited on the books of appellees for the price of the wheat, appellees stated the doubt was caused by a change in the books. However, we are of the opinion there is ample evidence in the record from which it can be reasonably inferred they were given credit pursuant to the terms of their contract of sale with appellees.

Appellants further say under the terms of their contract appellees would be required to pay Lenburgs $1800.00 for the first 1000 bushels of wheat, and for the overrun of 80 5/6 bushels $138.86; that therefore there is no basis for the amount of the judgment herein. We cannot see how appellants were harmed when the judgment was for less than half the amount received by them for the sale of all the wheat.

Appellants next contend the court erred in admitting in evidence appellees' Exhibit 2 which was the contract of sale and settlement between Lenburgs and appellants. Their objection to this exhibit in the trial court is as follows:

"Now the defendants and each of them object to the introduction of this instrument in evidence, the first reason that this instrument purports to be a Bill of Sale of personal property, which in itself is extraneous to the issues to be tried in this case. Number two, that there are certain statements in this instrument which are self serving declarations on the part of Lenburg and Lenburg and that are not a part of the Bill of Sale purporting to convey the personal property described in said Bill of Sale. There is no consideration passing from Mr. Mitchell to the Lenburgs supporting any of the so-called agreements in this Bill of Sale. For the further reason that Helen A. Mitchell specifically objects as the Bill of Sale is drawn to William B. Mitchell and not Helen M. Mitchell, and for the further reason that any title which the landlords claimed in the wheat was to be specifically growing

out of and under the lease and not as a result of any negotiations carried on between Mr. Mitchell and the Lenburgs for the purchase of certain personal property; and for the further reason that a bill of sale only binds the seller to the extent of the delivery of the property sold and reasonably good condition."

We are of the opinion the court properly overruled this objection. We believe this exhibit was proper to show that Lenburgs retained title to the growing wheat. It is undisputed that appellants paid Lenburgs $3500 for the settlement therein made. They are therefore bound by all of its terms. Having accepted the Bill of Sale they are now estopped from denying the reservation therein. 19 Am. Jur. (Estoppel), p. 625, §§27 et. seq. The evidence is undisputed that the appellant William B. Mitchell acted for and on behalf of his wife in the operation of the farm and the transactions with the Lenburgs.

Appellants next contend the court erred in refusing to permit the witness Baylor to testify as to what was said about the Bill of Sale to appellants at the time it was executed. Appellees objected on the grounds it was an attempt to vary the terms of a written instrument. We are of the opinion the trial court properly sustained the objection.

Finally appellant asserts the court erred in the assessment of the amount of recovery in that it is too large. For the reasons heretofore stated there is no merit to this contention.

Judgment affirmed.

NOTE.—Reported in 126 N. E. 2d 769.