Zane H. ZALEWSKI and Mary V. Zalewski, Appellants (Defendants Below),

v.

Timothy J. SIMPSON, Appellee (Plaintiff Below).

No. 3–1281A315.

Court of Appeals of Indiana, Third District.

May 19, 1982.

Rehearing Denied August 5, 1982.

David Paul Allen, Hammond, for appellants.

Steven P. Kennedy, Munster, for appellee.

HOFFMAN, Presiding Judge.

This appeal arises from an award of summary judgment in an action for breach of a contract to purchase real estate.

On February 12, 1980, Timothy Simpson accepted the offer of Zane and Mary Zalewski to purchase his real estate pursuant to a written contract. The contract was contingent upon the Zalewskis obtaining a VA first mortgage loan in the amount of $54,-000. Closing was to be within five days after the mortgage proceeds were ready to be paid out, and no later than March 28, 1980. The contract also provided that the purchaser would receive evidence of title, specifically a survey and a title insurance policy.

The Zalewskis applied for a VA loan from Calumet Securities Corporation. Calumet Securities received a preliminary title insurance report and a survey on February 27, 1980. These materials remained available pending closing. On March 7, 1980, Calumet Securities approved a VA loan to the Zalewskis in the amount of $54,000 and issued a commitment letter to them.

On March 25, 1980, Simpson, by his attorney, served a formal demand on the Zalewskis, alleging that all preconditions to close had been met and demanding that the Zalewskis close on March 28. On March 27, Simpson's attorney was advised by the Zalewskis' attorney that the Zalewskis would not close. Thereafter, on April 11, 1980 Simpson filed an action against the Zalewskis for breach of contract, requesting the liquidated damages provided for in the contract and for the damages of the real estate broker which had been assigned to him. The trial court granted Simpson's motion for summary judgment and awarded damages in the amount of $10,420 plus $2,500 in attorney fees.

It is this decision which the Zalewskis are appealing. The following issues, which have been condensed, are presented for review:

(1) whether the trial court erred in concluding that the seller had in all material respects performed in accordance with the terms of the contract;

(2) whether the trial court erred in concluding that all preconditions to closing had been met;

(3) whether the trial court erred in denying the Zalewskis' motion to strike portions of Simpson's affidavit; and

(4) whether the trial court erred in awarding the liquidated damages provided for in the contract plus attorney fees.

When reviewing the granting of a summary judgment, the Court of Appeals must determine whether there is any genuine issue of material fact and whether the law was correctly applied. *Wallace v. Indiana Ins. Co.* (1981), Ind.App., 428 N.E.2d 1361.

The Zalewskis have alleged that Simpson failed to provide a survey and title materials which constituted a violation of the contract. They use case authority to support their position that Simpson had a duty to present clear and marketable title, yet not once do they claim the title was defective in any way. Rather, their complaint was that the title materials were presented to their mortgage lender instead of to them personally.

The contractual obligations regarding title evidence were substantially complied with and the Zalewskis have suggested no prejudice which resulted from the manner in which the title evidence was handled. For approximately thirty days prior to the closing date, the documents were in the hands of the mortgage lender whom the Zalewskis chose to work through in obtaining their loan. The title evidence was available to the Zalewskis during that time. Although the practice of the lender receiving the title evidence is common, the Zalewskis had the additional opportunity to object to the situation by way of the demand letter sent to them by Simpson's attorney on March 25 which stated:

"The title report has been delivered to you, is clear of defects in title, and no reasonable extension of time is necessary with respect to this closing date."

*Record* at 46.

Yet the Zalewskis made no complaint at that point. Subsequently they simply refused to close. We must agree with the trial court that in all material respects, Simpson performed in accordance with the terms of the contract.

Next, the Zalewskis allege that the trial court erred in concluding that all preconditions to closing had been met. They contend that despite their efforts, they had not obtained a VA loan. The Zalewskis argue that the VA guaranty was not complete and also find fault with the proposed interest rate.

■ First of all, in connection with their loan application, the Zalewskis signed an agreement to accept the loan at the maximum prevailing interest rate permissible under FHA/VA regulations at the time of closing. Now they assert that the commitment they received from Calumet Securities which established the interest rate at 13% was invalid because of a federal regulation which provided for an interest rate ceiling of 10% on such loans.[1] However, this regulation was asserted for the first time by the Zalewskis in their brief on appeal. No evidence of any such regulation was ever before the trial court for its consideration. In fact the evidence before the trial court was that the Zalewskis had originally applied for a loan at the rate of 12% interest. Also, in their memorandum of facts and law which was submitted to the trial court in support of their opposition to the motion for summary judgment, they specifically stated, "Defendants do not rely upon or claim the applicability of any federal law or law of other states." *Record* at p. 70. Being a court of review, we will not consider evidence which was never presented to the trial court. *Mitchell et al. v. Falter et al., etc.* (1955), 126 Ind.App. 34, 126 N.E.2d 769.

■ Likewise the argument of the Zalewskis that the VA guaranty was not complete is without merit. On March 7, 1980, the Zalewskis received a commitment letter from Calumet Securities for a VA loan in the amount of $54,000, after which time, the funds were available. Evidence contained in the affidavit and deposition of Mr. Rurode, an officer of Calumet Securities, established that the further processing of the VA guaranty had no effect on the Zalewskis' commitment. Calumet Securities was committed to the Zalewskis' loan when they issued their commitment letter and the VA guaranty was for the protection of Calumet Securities. Therefore, the trial court was correct in determining that the precondition of obtaining the loan had been met.

■ Next, the Zalewskis allege that the trial court erred in denying their motion to strike portions of Simpson's affidavit in support of his motion for summary judgment. They argue that the following paragraphs of Simpson's affidavit are not sufficiently within his personal knowledge so as to comply with Ind.Rules of Procedure, Trial Rule 56(E):[2]

"3. A preliminary title insurance binder was furnished to Defendants ZANE and MARY ZALEWSKI, or their agent, in late February or early March, 1980, the exact date of receipt being unknown to the undersigned, a copy of said title insurance binder being attached hereto and incorporated herein as Exhibit 'A'.

\* \* \* \* \* \*

5. On March 25, 1980, the undersigned, by his attorney, notified the Defendants to be prepared to close the sale on March 28, 1980 in accordance with the agreement of the parties, or be held in default of the agreement, a copy of said notice being attached hereto and incorporated herein as Exhibit 'B'.

\* \* \* \* \* \*

1. 38 C.F.R. § 36.4311 (1979 Revision).

2. TR. 56(E), in relevant part, provides:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

7. On March 27, 1980, the undersigned, by his attorney, was advised by the attorney for Defendants ZANE and MARY ZALEWSKI that the ZALEWSKIs would not close the sale as requested."

Affidavit of Timothy J. Simpson, *record* at pp. 39–40.

First of all, the Zalewskis appear to have recanted any error with respect to paragraph 5 of the affidavit. For in their brief, we find the following statements:

"The Zalewskis do not argue here that they suffered harm from the refusal below to strike rhetorical paragraph number five (5). The Zalewskis *admit* that they received the described written notice."

Brief of appellants, pp. 32–33.

As to paragraphs 3 and 7, any error in denying the motion to strike was harmless, since the allegations in those paragraphs were sufficiently established by other materials before the trial court. With respect to the allegation in paragraph 3 that the title materials were furnished to the Zalewskis or their agent prior to the closing, those facts were established by the deposition of Mr. Rurode, wherein he stated that Calumet Securities received the title evidence on February 27.

The substance of the allegation in paragraph 7 was also covered in paragraph 4 of the affidavit.

"4. Subsequent to securing the loan commitment and being furnished the report of title, the undersigned was advised by Defendants' ZANE and MARY ZALEWSKI that said Defendants would not agree to close the sale in accordance with the agreement of the parties."

Affidavit of Timothy J. Simpson, *record* at p. 39.

No objection or allegation of error was made as to paragraph 4. Furthermore, it is clear that the Zalewskis refused to close, otherwise, no action would have been filed, no case would have been before the trial court, and no appeal would be before us now.

■ Finally, the Zalewskis allege the trial court erred in the amount of damages awarded. The trial court awarded liquidated damages of 10% of the sale price, plus 7% for the real estate commission, as provided for in the contract. The Zalewskis contend that the liquidated damages clause should have been stricken as a penalty.

Indiana appellate tribunals have long struggled with the question of whether contractual provisions which stipulate damages in the event of breach should be considered valid liquidated damages clauses or penalties. There are no hard and fast guidelines to follow.

" 'There is a plethora of abstract tests and criteria for the determination of the nature of a contractual provision as one for a penalty or liquidated damages, and in most instances the courts struggle valiantly to make the result reached by them accord reasonably well with one or more of the more prominent of these abstract tests. But it must be observed that, in the last analysis, these factors and criteria are so vague and indefinite that it is doubtful if they are of much aid in construing a specific contractual provision, even assuming that the court makes a conscious and conscientious effort to apply them. At any rate, a reading of the cases collected herein conveys the impression that the ultimate catalyst is the court's belief as to the equities of the case before it.' "

*Skendzel et al. v. Marshall et al.* (1973), 261 Ind. 226, at 233, 301 N.E.2d 641, at 645, quoting 6 A.L.R.2d 1401 (1949).[3]

Recently, this Court said:

"It is generally held in Indiana that liquidated damage provisions are enforceable where the nature of the contract is such that upon breach the resulting damages would be uncertain and difficult to ascertain. The sum designated as liquidated damages cannot be grossly disproportionate to the loss that may result, unreasonable or unconscionably in excess of the loss sought to be averted. If the sum

---

**3.** *See also Tudor v. Beath* (1921), 76 Ind.App. 526, 131 N.E. 848.

stipulated is greatly disproportionate to the actual loss and unreasonable, it will be considered a penalty and unenforceable. It is impossible to lay down any definite rules as to what may or may not be unconscionable, for each case must depend upon its own particular facts. Generally speaking, in determining the reasonableness of the amount, the court will consider the relation of the parties, their situation, the absence or presence of fraud or oppression, and the purpose which the agreement seeks to sustain." (Citations omitted.)

*General Bargain Center v. American Alarm Co.* (1982), Ind.App., 430 N.E.2d 407, at 411.

There was no evidence of fraud or oppression in this case. The purpose of the provision was not to force compliance with the contract, but rather to compensate in the event of breach for damages which were uncertain and difficult to ascertain at the time the contract was executed.[4] While the amount of damages awarded seems rather high, it is not so unreasonably disproportionate from the damages actually incurred, *i.e.* the sale of the real estate at a lower price, the utilities paid while the house was vacant, an extension incurred on a loan, etc., so as to be penal in nature.

Having found that there was no issue of material fact and that the law was correctly applied with respect to the summary judgment and the damage award, the judgment of the trial court is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.

4. See *Czeck v. Van Helsland et al.* (1968), 143 Ind.App. 460, 241 N.E.2d 272.