ROBERT LIVAS, Plaintiff-Appellee, v. D. KEVIN KODRICK *et al.*, Defendants-Appellants.

Third District   No. 3—85—0586

Opinion filed May 14, 1986.—Rehearing denied July 3, 1986.

H. Kent Heller and Rosemarie A. Heller, both of Harlan Heller, Ltd., of Naperville, for appellants.

Thomas R. Wilson, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff, Robert Livas (Livas), brought the instant action seeking specific performance of a real estate contract. The trial court held for Livas, and we affirm.

In November 1984, Livas was interested in buying a home in Plainfield so that his daughter could continue to attend a Plainfield school the following autumn. He met Carol Strader, a realtor, by chance on the street. Strader was under the impression that the home owned by defendants, the Kodricks, might be for sale. Although the Kodricks had not approached Strader concerning the sale of their home, she had learned through prior dealings that they might be receptive to such an offer.

Strader showed Livas the Kodrick house on two occasions. On November 21, Livas signed an offer to purchase the house for $73,000. Two days later, the Kodricks accepted.

Because the Kodricks were expecting a child in December, the standard contract had some modified terms. Closing was set for the later of (a) March 30, 1985, (b) 20 days after notice of procurement of financing, (c) 10 days after delivery and acceptance of title commitment by the lender or (d) any mutually agreeable later date. Livas had 90 days to procure a mortgage commitment of $50,000. The critical

term at issue was paragraph H, entitled "Financing Conditions":

> "If after the Buyer has submitted a loan application and otherwise made every reasonable effort to procure a loan commitment and has been unable to do so within the time period specified above (90 days), then this contract shall become null and void, and all monies paid by the Buyer shall be refunded. NO NOTICE TO SELLER IS REQUIRED. Seller shall allow reasonable inspection of the premises by the Buyer and his financing agent and furnish any pertinent information requested by them. Seller shall execute and deliver any and all reasonable written documentation required of the mortgage lender in regard to the new mortgage. For purposes of this contract, reasonable effort to obtain a loan commitment shall be deemed to include, but not limited to, making written application within sixty (60) days hereof for such loan on the terms set forth in this paragraph in at least one financial institution in the county in which the real estate is located."

Finally, the contract provided that the Kodricks were to serve a title insurance policy from Tricor Title Insurance Company of California on Livas or his agent no less than 10 days before the scheduled closing. Time was deemed to be of the essence.

On January 18, a few days before Livas was required to apply for financing, Strader told Livas that the Kodricks had inquired as to whether the date for closing could be moved back. Apparently the Kodricks were looking at a house under construction which they could not move into until mid-April. Livas was amenable since his only concern was having a home for his daughter in time to qualify her to attend school in Plainfield. Moreover, Livas was aware that loan commitments are generally held open for only 60 days. Accordingly, he delayed applying for financing until February 22.

At this point, owing to a glaring absence of communication, things began to fall apart. The Kodricks, perhaps unaware that Livas had foregone a timely search for financing, acted as if things were to proceed according to the contract. They found alternative living quarters and moved some items in. Their attorney submitted an Attorneys' Title Guarantee Fund letter to both Strader and Citicorp of Oak Brook, Livas' putative financier. As of a day or two before March 30, the Kodricks acted as if all systems were go.

Meanwhile, Livas was having problems with Citicorp. Two separate notices were sent to him requesting additional information. As of March 30, Livas had no commitment for financing, although he testified that he could have fulfilled his obligations anyway. On March 30,

no closing was held nor did either party tender performance in any manner.

The Kodricks agreed to set the closing back to the middle of the first week of April. Livas still did not have a written commitment for financing. Out of frustration from this and other problems arising from the transaction, the Kodricks instructed their attorney to write to Livas that they considered the contract null and void pursuant to paragraph H. On April 18, Livas obtained his financing commitment. Following various moves and countermoves not germane to this appeal, the deal fell through completely. The instant complaint was then filed.

The trial court ordered the contract specifically enforced. Regarding the strict time limitations of paragraph H, the court held that by delaying the closing, the Kodricks waived their right to rely on the "time of the essence" provisions of the contract. It was further held that a title policy had not been submitted as called for in the contract. That the policy was not from Ticor Title Insurance of California was not critical; rather, it was the failure to serve the policy on Livas or his agent which contravened the contract. The court further found that no date, time or place had ever been set for a closing. Lastly, although it did not so hold in its final ruling, the court did rule in denying a motion for a directed verdict that paragraph H was for the benefit of the buyer.

The net effect of the relevant clauses is that if Livas did not come up with mortgage financing within 90 days of execution, the contract would become a nullity. However, the Kodricks did not treat the contract as null and void as of that date. Instead, they proceeded under the assumption that the sale would close on March 30. Only when they were informed that there would be no closing as of the mutually agreed upon date the next week did they seek to invoke paragraph H.

■ The court properly found that the sellers waived the time of the essence provision. When Livas failed to obtain a mortgage commitment, the Kodricks did not invoke paragraph H. To the contrary, they set up a closing date later than the contemplated March 30 date. Once a timeliness clause has been waived, it may be revived only by specific notice of that intention. (*Hart v. Lyons* (1982), 106 Ill. App. 3d 803, 436 N.E.2d 723, citing *Fox v. Grange* (1913), 261 Ill. 116, 103 N.E. 576.) The Kodricks gave no such notice.

■ Furthermore, it is unlikely that the Kodricks could have demanded strict compliance. As the court found, no evidence of title was ever served on Livas or his agent. The court found that Strader was not Livas' agent. This view is entirely supported by the record.

Strader acted as an intermediary, concerning herself with protecting the deal itself rather than serving the interests of either party. Service of the title letter on Citicorp was ineffective as well. Livas' difficulties with them proves that they were anything but his agent.

The Kodricks also argue that their failure to serve evidence of title upon Livas was frustrated by his moving and giving them no new address. The record does not support such a view. There is no evidence of returned mail. Letters from Kodrick's attorney reached Livas.

■■ Consequently, the Kodrick's failure to act in a timely manner waived their right to rely on paragraph H. Moreover, Livas' obligation to close was never triggered because no evidence of title was given to him in the manner specified in the contract. Accordingly, the court's order that the Kodricks produce evidence of title and consummate the transaction is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.