Lowell HOFFMAN, et al., Respondents,

v.

Arthur NYGAARD, et al., Appellants.

No. C3–86–460.

Court of Appeals of Minnesota.

Oct. 7, 1986.

Michael R. Savre, Gavin, Olson, Conkel & Savre, Ltd., Glencoe, for respondents.

Dewey M. Nelson, Alexandria, for appellants.

Heard, considered and decided by FORS-BERG, P.J., and FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

Arthur and Diana Nygaard appeal the trial court's determination that they breached a purchase agreement by refusing to complete the purchase of a home owned by the Hoffmans. We affirm.

## FACTS

On April 23, 1983, Arthur and Diana Nygaard signed a purchase agreement to buy a home in Cyrus, Minnesota, from Lowell and Jennifer Hoffman for $36,000. The Hoffmans accepted the offer. The agreement provides:

> Closing date to be date loan is obtained by buyer. This agreement contingent on financing. Real estate taxes due and payable in 1983 will be prorated as of May 1, 1983, date buyer to move into subject house. Buyer to pay rent of $375 per month beginning June 1, due June 1, 1983 and each month thereafter until buyer is able to obtain loan. Any rent paid to be applied to principal until September 1, 1983. If buyer cannot obtain loan by September 1, 1983 all rents will be forfeited to seller. Buyer to pay all utilities from May 1, 1983. Buyer will not make property subject to mechanics liens until closing.

> \* \* \* \* \* \*

> Buyer will make all necessary repairs. House is being sold as is at this price.

The price was reduced from $37,000 to $36,000 because of water problems in the basement. Nygaards paid $1,000 in earnest money, leaving $35,000 to be financed. Diana Nygaard anticipated receiving a worker's compensation settlement of about $7,000 in the near future. Hoffmans knew that Nygaards intended to use the settlement as a downpayment and accepted re-

ceipt of the settlement as part of the financing contingency.

Nygaards moved into the house on May 1; in July they applied for a loan from First Federal Savings Bank in Morris. The bank agreed to lend them $35,000, but Nygaards did not accept. Because they had not yet received the worker's compensation settlement, they could not afford a downpayment large enough to reduce the loan to manageable monthly installments. They intended instead to wait until the settlement arrived and then apply for a loan of $28,000. The bank was willing to make this loan, but Nygaards did not apply for it.

Diana Nygaard did not receive the worker's compensation settlement by September 1, 1983. It was understood by the parties that the failure to close by that date did not terminate the purchase agreement, but Nygaards would forfeit the right to apply rent payments to the principal amount owed under the contract. Nygaards continued paying $375 per month rent. They also continued to improve the property by installing new carpet in one room, completely painting the interior, replacing the fireplace front, trimming trees and landscaping the lot.

Over the winter the basement water problem became worse. Nygaards removed up to one hundred gallons of water per day with a wet vacuum. In March 1984 Nygaards notified Hoffmans they were moving out. They left by the first of April. Hoffmans immediately brought suit for breach of the purchase agreement; Nygaards counterclaimed for breach of oral warranties on the amount of water leakage in the basement and for the value of improvements they made.

Diana Nygaard received her worker's compensation settlement in July 1984, which Nygaards used to purchase her grandmother's home for $22,000.

The trial court found that Nygaards breached the purchase agreement and ordered judgment for Hoffmans for $4,600.[1]

## ISSUE

1. Did Nygaards breach the purchase agreement by refusing to complete the purchase of Hoffmans' house?

## ANALYSIS

Nygaards argue that the financing contingency is a condition precedent that was never satisfied because they did not obtain suitable financing, and the agreement is therefore unenforceable. The trial court, however, accepted Hoffmans' argument that, because the Nygaards were able to obtain a loan, they were obligated to accept it even if the monthly payments were higher than they could afford.

Nygaards had an affirmative duty to satisfy the financing contingency in good faith. *Plaisted v. Fuhr,* 367 N.W.2d 541, 545 (Minn.Ct.App.1985). They were not free "to determine whether the financing can be or has been obtained without making illusory the promise to purchase." *Id.* However, the financing available must comply with the terms of the purchase agreement before the contracting parties can demand performance. *See In re Standard Conveyor Co.,* 773 F.2d 198, 201 (8th Cir.1985) (the availability of financing comporting with the requirements of the purchase agreement is the prerequisite for performance, not the likelihood of "satisfactory financing"); *Blattner v. Forster,* 322 N.W.2d 319, 321 (Minn.1982) (a contract term requiring refinancing from a lending institution is not satisfied by refinancing through a contract for deed).

Both parties testified that the receipt of Diana Nygaard's worker's compensation settlement was one of the financing contingencies, even though not expressed in the

---

1. It is not clear how the trial court arrived at the damages figure; the damages claimed at trial were unpaid rent through September 1984, reduced rent from then until trial, and unpaid real estate taxes. These claims amount to about $5,000. The court apparently allowed a small set-off for the improvements Nygaards made to the property. However, we need not resolve any discrepancy in the amounts. Nygaards dispute their *liability* for the damages, not the method by which the court arrived at them.

written agreement. Hoffmans accepted this contingency and were willing to wait until Nygaards received the settlement. That being so, Nygaards did not breach the purchase agreement by refusing the $35,-000 loan while they waited for the settlement. Nygaards continued to act in good faith with the intention to purchase Hoffman's home when they received the settlement.

However, Nygaards did breach the agreement by refusing to close the sale after receiving the settlement. Nygaards understood they had a binding purchase agreement for an indefinite period to end when they received the settlement and obtained a loan for the balance. Only after going through the winter and discovering the severity of the basement water problem did Nygaards decide to back out.[2] Nygaards were not free to abandon the purchase agreement because they became dissatisfied with the arrangement they had agreed to in the contract. Financing was available to them and they were obligated to finalize a loan and purchase Hoffmans' home when they received the worker's compensation settlement.

### DECISION

Nygaards breached their agreement to purchase Hoffmans' house when they failed to finalize a loan and complete the purchase when Diana Nygaard received a worker's compensation settlement that was understood to be part of the financing contingency.

Affirmed.

---

**2.** There is convincing evidence in the record that Nygaards knew the water problem was extensive and could cost up to $4,500 to repair. When they signed the purchase agreement, Diana Nygaard brought with her a document containing an estimate for "basement water control" which she used in negotiating the sale price of the house.