**Daniel H. KELIHER, Appellant,**

v.

**Eric G. CURE and Elizabeth A. Cure, Appellees,**

**and**

**F.C. Tucker Co., Inc., and Margaret Mitchell, Nominal Appellees.**

**No. 49A02–8610–CV–376.**

Court of Appeals of Indiana, Second District.

March 9, 1989.

---

Richard A. Gole, P.C., Indianapolis, for appellant.

Ronald A. Wright, Harlow & Wright, Indianapolis, Edgar Allen Dale, South Portland, Me., for appellees.

Richard E. Aikman, Jr., Stewart, Irwin, Gilliom, Meyer & Guthrie, Indianapolis, for nominal appellees.

SULLIVAN, Judge.

Daniel H. Keliher (Keliher) appeals a judgment in favor of Eric G. and Elizabeth A. Cure (Cures) arising out of a real estate purchase agreement. The judgment ordered the return of the $5,000 earnest money deposit to Cures and denied Keliher's counterclaim for breach of the contract. The tenor of the judgment was to declare that performance of the purchase agreement was not required because a preliminary condition, i.e., Cures obtaining a favorable loan commitment on or before February 6, had not been fulfilled and that according to the terms of the contract, "time being of the essence," the contract became null and void.

We reverse.

The purchase agreement in question was executed December 22, 1983. It called for a purchase price of $177,000 for the residential property with closing to take place on March 3, 1984. Cures made an earnest money deposit of $5,000 placed in escrow with F.C. Tucker, the real estate company involved.

Pursuant to the terms of the agreement, Cures had twenty working days in which to obtain "favorable commitment(s) or mortgage assumption approval." Record at 5. By agreement, the time was extended for obtaining financing for an additional ten working days, i.e., to February 6, 1984. On January 31, 1984, Cures obtained a financing commitment from Citicorp Homeowners, Inc. for the $157,000 loan requested, subject, however, to a requirement of

verification concerning the source and nature of the $20,000 down payment contemplated. The commitment letter required that if the source of the $20,000 were a gift, a "gift-letter" should be submitted and if it were an "undisclosed debt" it would have to be approved. Record at 13.

The specific pertinent provisions of the agreement read as follows:

"D. TIME FOR OBTAINING FINANCING: Purchaser agrees to make application for any financing necessary to complete this transaction, or for approval to assume the unpaid balance of the existing mortgage within 5 days after the acceptance of this Purchase Agreement and to make a diligent effort to obtain financing in cooperation with the Broker and Seller. No more than 20 working days after the acceptance of the Purchase Agreement shall be allowed for obtaining favorable commitment(s) or mortgage assumption approval. If a commitment or approval is not obtained within the time specified above, this Agreement shall terminate unless an extension of time for this purpose is mutually agreed to in writing.

E. CLOSING DATE: Closing date shall be on or before March 4, 1984 or within 5 days after mortgage approval whichever is later.

     *    *    *    *    *    *

O. TIME IS OF THE ESSENCE: Time periods specified in this Agreement shall expire at midnight on the date stated unless the parties agree in writing to a different date and/or time.

P. EARNEST MONEY: Purchaser submits herewith $5,000.00 as earnest money which shall be applied to the purchase price. Earnest money shall be deposited in the listing REALTOR'S Escrow Account, immediately upon acceptance of the Purchase Agreement, and held until time of closing the transaction or termination of this Purchase Agreement. Earnest money shall be returned promptly in the event this offer is not accepted. If this offer is accepted and Purchaser shall fail or refuse to close the transaction, without legal cause, the earnest money shall be forfeited by Purchaser to Seller." Record at 187.

The $20,000 sum not covered by the loan commitment represented money obtained or to be obtained from Eric Cure's parents. It was unclear, however, whether the money, as anticipated by the Cures, was to be a gift or, as indicated by the testimony of the parents, a loan. In any event, conversations ensued among the Cures, the parents and Citicorp concerning the down payment. The parents refused to execute a gift letter and the conversations or negotiations continued past the February 6 date, with full knowledge and acquiescence from Keliher. During this period, on some date after receipt of Citicorp's conditional loan commitment, the Cures made a loan application to a Columbus, Indiana bank for the same $157,000 amount. That application was denied approximately February 12. On February 14, Citicorp removed the "gift-letter"/undisclosed debt approval condition and issued an unconditional commitment for the full $157,000. The Cures, however, had changed their mind about completing the sale and requested a refund of their earnest money deposit.

Elizabeth Cure testified that the reason they did not carry through upon closing the purchase after receiving Citicorp's waiver of the "gift letter" requirement was that "we conditioned our purchase on our ability to get favorable financing. That is, on our ability to be able to afford the house." Record at 208. It is apparent from her testimony that the Cures, despite having a belated unconditional commitment for the contemplated loan amount of $157,000 with the condition of verification of the source of the $20,000 having been removed, decided not to complete the deal because they had second thoughts about their ability to afford the house. It was not because they could not receive favorable financing. They had received that commitment, as of February 14, for the loan amount sought.

■ It is Keliher's position that the January 31 Citicorp commitment letter was final and unconditional and that the Cures failed to carry through and secure the necessary financing by signing and returning

the commitment letter and remitting the required origination fee before February 14.

Keliher is in error. Not only does his argument ignore the February 6 date for fulfillment of the financing condition, but also the fact that the commitment reflected by the Citicorp letter was conditional. Unless the February 6 date was waived or otherwise extended, it is clear that the "favorable commitment" was not timely obtained.

Keliher does not argue, nor could he do so successfully, that the Cures did not exercise reasonable diligence during the life of the purchase agreement to obtain such favorable commitment.

■ The question as to the return of Cures' earnest money is whether the purchase agreement's life was extended beyond February 6. Eric Cure testified that Citicorp demanded a gift letter verifying that the source of the down payment was a gift and that a loan from the senior Cure would not satisfy the conditions of the conditional commitment. This testimony is belied by the specific wording of the condition set forth in the commitment letter. As earlier noted, that condition concerned the source of the prospective down payment and stated that if it were a gift, a gift letter was required but that if it were "an undisclosed debt," approval (presumably by Citicorp) was required.

Eric Cure also testified that when the Columbus bank denied a loan application in the same amount as applied for with Citicorp, the Cures decided that the "purchase price would be not affordable for us." Record at 270. This change of heart, of course, took place after Cures had already agreed to the purchase price.

It is clearly apparent that all parties to the transaction, including the two individual real estate agents and Citicorp, considered the purchase agreement viable notwithstanding that the February 6 date had come and gone. This is true even though Cures conceded that denial of a loan by the Columbus bank merely confirmed the view held by Cures "all along that they were definitely in 'over their heads' by buying a house with a purchase price in the $177,000 range." Record at 126–127. It was not until after the Columbus bank denied the Cure's loan on February 12, that on February 14 the Cures attempted to rescind the purchase agreement. On that date the Cures tendered to Keliher a proposed agreement which would have relieved the parties of all duties and obligations under the purchase agreement and would have declared the agreement "to be rescinded null and void, and of no further force and effect whatsoever." Record at 70. Keliher did not execute the agreement tendered on February 14. It is manifest, however, that by initiating such proposal and by stating that it would nullify the purchase agreement, the Cures did not consider the agreement to have been terminated and rendered null and void as of February 6.

■ It has been said:

"Time is not of the essence of an absolute contract for the sale of land wherein one of the parties agrees to sell and the other to buy, the sale to be completed within an agreed time." 8A *Thompson on Real Property* § 4460 (1963 Repl.).

Where time is considered to be of the essence, it has also been said that such a provision is made for the benefit of the vendor and may be waived by him. *Smith v. Piluso* (1986) 79 Or.App. 238, 719 P.2d 33; *Morris Morgan Realty, Inc. v. Johnson* (1985) S.C.App., 288 S.C. 43, 339 S.E.2d 514; *Bossi v. Whalen* (1985) 19 Mass. App.Ct. 966, 473 N.E.2d 1167; *contra Ross v. Eichman* (1987) 129 N.H. 477, 486, 529 A.2d 941, *aff'd*, (1988) 543 A.2d 427, (time of essence provision for purchaser to obtain financing is for benefit of purchaser).

It seems strikingly more appropriate, unless the provision is clearly for the benefit of one or the other party, to say that such provisions are for the mutual benefit of both parties. *Alk v. Lanini* (1982) 61 Or. App. 158, 656 P.2d 367.

Be that as it may, it is doubtful that a general statement in the contract "that time is of the essence," as contained in the agreement here, serves to make the duty to close on March 4, 1984, truly of the essence

of the contract. *Corbin on Contracts* § 715, p. 676 (One Vol.Ed.1952).[1] Even if so, it is only that final stage of the executory contract which could be held to be "of the essence." *See Schneider v. Dumbarton Developers, Inc.* (1985) D.C.Cir., 767 F.2d 1007. The preliminary and collateral provision whereby purchaser agreed to obtain a favorable commitment is not "of the essence." *Kakalik v. Bernardo* (1981) 184 Conn. 386, 439 A.2d 1016.

This principle was recognized in *Highland Inns Corp. v. American Landmark Corp.* (1983) Mo.App., 650 S.W.2d 667. The Missouri court observed that while a breach of a preliminary or collateral promise might render subsequent duties and obligations unenforceable, i.e., no absolute compulsion to complete the transaction, the contract is not necessarily terminated and rendered null and void for all purposes.

Keliher incorrectly applies the term "waiver" to the conduct of the Cures. He argues that they waived the "time of the essence" provision of the contract. We infer that Keliher is asserting that by their conduct the Cures sought to extend the period for performance of the financial commitment provision, and that by cooperating in the continuing efforts of the Cures, Keliher agreed to the extension of time.

The term "waiver," if it were applicable to the facts before us would necessarily focus upon the conduct of Keliher. Keliher here, by his conduct, waived his right to declare the contract null and void as a result of Cures' failure to obtain an unconditional loan commitment by February 6. *See Kokomo Veterans, Inc. v. Schick* (1982) 3d Dist.Ind.App., 439 N.E.2d 639.

There can be no doubt that a contractual provision may be waived by a knowing and willing acquiescence in the conduct of the other party. *Unishops, Inc. v. May's Family Centers, Inc.* (1980) 3d Dist.Ind.App., 399 N.E.2d 760; *South Side State Bank v.*

*Snyder* (1931) 92 Ind.App. 433, 176 N.E. 52. The conduct of the parties here discloses that each of them considered the purchase agreement to be of full force and effect after February 6 and up and until February 14 when Cures decided they had made an unwise contract. *See Lacy v. White* (1972) 1st Dist., 153 Ind.App. 504, 288 N.E. 2d 178 (parties bound by construction placed upon contract as evidenced by their conduct); *see also Boldt v. Early* (1904) 33 Ind.App. 434, 70 N.E. 271.

■ A purchaser, following demonstration of a seller's acquiescence in delay, is entitled to expect the seller to continue to abide by the contract until notice is given to the contrary. *Stargiotti v. Nigrello* (1985) 114 A.D.2d 498, 494 N.Y.S.2d 411; *Walker v. Benton* (1981) Fla.Dist.App.Ct., 407 So.2d 305. Conversely, when the seller expresses a willingness to acquiesce in a delay and to assist the purchaser to carry out the contract after a time limit has expired, the seller is entitled to rely upon the purchaser to not suddenly renege on the bargain. *Livas v. Kodrick* (1986) 143 Ill.App.3d 1097, 98 Ill.Dec. 85, 493 N.E.2d 1106 (seller acquiesced in purchaser's delay in seeking financing and also agreed to extension of closing date. Held: Time as of the essence waived); *Kitsos v. Terry's Chrysler–Plymouth, Inc.* (1979) 70 Ill.App. 3d 728, 27 Ill.Dec. 91, 388 N.E.2d 1054; *McQuary v. Missouri Land Co.* (1910) 230 Mo. 342, 130 S.W. 335; 8A *Thompson on Real Property* § 4460, p. 343 (1963 Repl. Ed.).

In *Hoffman v. Nygaard* (1986) Minn. App., 393 N.W.2d 695, the facts were strikingly similar to those here. The closing date was fixed as of the date purchasers obtained financing. This was because prior to closing, purchasers were to take possession and pay rent. The purchasers had until September 1, 1983, to obtain a loan, failing which all rents would be forfeited to

---

**1.** It is doubtful that specifying a date certain for closing makes time of the essence. *Limpus v. Armstrong* (1975) 3 Mass.App.Ct. 19, 322 N.E.2d 187; 8A *Thompson on Real Property* § 4460 (1963 Repl.Ed.). *But see Will v. Will Products, Inc.* (1982) 109 Ill.App.3d 778, 65 Ill.Dec. 430,

441 N.E.2d 343 (specification of closing date indicates time is of essence but can be waived and period for performance extended by conduct of purchaser requiring specific performance by purchaser when demanded by seller).

seller. Seller knew that purchaser was counting upon a legal settlement of approximately $7,000 to cover a portion of the purchase price. The legal settlement was delayed beyond September 1 and by common consent both parties considered the delay in closing to not terminate the contract. During the period as extended, purchasers continued to pay rent but prior to receiving the legal settlement and consummating a loan arrangement, changed their minds and moved out of the house. When the legal settlement was received, purchasers did not carry through with the loan which had been available. The court held:

> "[Purchasers] were not free to abandon the purchase agreement because they became dissatisfied with the arrangement they had agreed to in the contract. Financing was available to them and they were obligated to finalize a loan and purchase [sellers'] home when they received the worker's compensation settlement." 393 N.W.2d at 697.

The purchase agreement here provided that closing would take place on March 4, 1984, at the earliest. It appears, therefore, that the February 6 date with respect to a loan commitment was not intended to be truly of the essence of the contract so long as any delay in obtaining the commitment would not result in prejudice to either party or in delay of the closing date. The real estate agent representing Keliher so indicated. The negotiations which resulted in Citicorp's waiver of the "gift-letter" clearly took place after expiration of the time fixed for the Cures to obtain a favorable commitment. That condition, however, was denoted as a "pre-closing condition." Record at 240. Therefore, we hold that the conduct of the parties served, as a matter of law, to extend the period for obtaining an unconditional commitment so long as that extension did not jeopardize closing the sale on March 4. The commitment was made unconditional on February 14, in ample time to close on March 4. *See Tremouliaris v.*

*Pina* (1987) 23 Mass.App.Ct. 722, 505 N.E. 2d 225.[2]

Our Third District in *Billman v. Hensel* (1979) 3d Dist., 181 Ind.App. 272, 391 N.E. 2d 671, affirmed a judgment in favor of sellers for the earnest money deposit upon grounds that the buyers had not made a good faith effort to secure financing. However, the facts of the case reflect an alternative basis for the result. In *Billman,* the loan commitment failed because purchasers could not prove access to funds adequate to cover the difference between the loan and the purchase price. Notwithstanding the sellers' offer to reduce the purchase price to obviate this hurdle, the purchasers refused to complete the transaction. The *Billman* decision, therefore, is consistent with our decision here. *Nicholls v. Pitoukkas* (1986) 2d Dist.Ind.App., 491 N.E.2d 574, is not contrary to our holding. In *Nicholls,* purchaser did not, as required, seek a loan within the time specified. The belated effort was unsuccessful because purchasers did not qualify for the loan. Therefore, the breach or failure to timely apply for a loan was without consequence. Accordingly, the purchasers were entitled to a return of their earnest money. *Nicholls* is distinguishable because here, as in *Billman,* the obstacle to fulfillment of the contract was removed during a period when the parties continued to consider the contract in being and prior to the purchasers' change of mind concerning the wisdom of their bargain.

■ Our determination that Keliher is entitled to the $5,000 earnest money requires further consideration with respect to Keliher's counterclaim for damages. It was error for the court to find against Keliher on the counterclaim unless implicit in that judgment was a conclusion that the earnest money constituted liquidated damages for the Cures' breach. If the $5,000 was not a liquidated damage amount, Keliher may have proved compensatory damages over and above the $5,000 amount.

---

2. To include the contemplated arrangement with Eric's parents for the remainder of the purchase price, as an indispensable element of the unconditional commitment, would be to ignore the contracted-for purchase price vis-a-vis the loan amount of $157,000 for which commitment was sought and which was received.

From the purchase agreement itself, it appears that the earnest money was to be forfeited in event of a breach by Cures, but such forfeiture was not declared to be the exclusive relief available to Keliher.

However, Keliher amended his counterclaim to seek retention of the $5,000 earnest money as "liquidated damages." Record at 121. By according him the very relief requested, our decision makes it unnecessary to determine whether the judgment upon the counterclaim is otherwise erroneous. We do not, therefore, consider whether under other circumstances we might order a new trial upon the counterclaim or direct the trial court to enter judgment upon the counterclaim for some damage amount different than the $5,000 liquidated damage amount.

The judgment is reversed and the cause remanded with instructions to enter judgment for Keliher in the sum of $5,000 together with interest thereon from July 7, 1986, the date of the trial court judgment.

RATLIFF, C.J., and BUCHANAN, J., concur.