Randy L. BECK and Nancy L. Beck,
Appellant–Defendants Below,

v.

C. DeWayne MASON and Laurel
R. Mason, Appellee–Plaintiffs
Below.

No. 87A04–9106–CV–172 [1].

Court of Appeals of Indiana,
Third District.

Oct. 28, 1991.

---

1. This case was diverted to this office by order of the Chief Judge.

S. Anthony Long, Phillips and Long, P.C., Boonville, for appellant.

STATON, Judge.

Randy and Nancy Beck appeal an adverse judgment on C. DeWayne and Laurel Mason's complaint for breach of contract. The Masons sued to recover a $1,000 deposit paid to the Becks under a real estate purchase agreement. The Becks also appeal a negative judgment entered on their counterclaim against the Masons. The appellants raise five issues for our review, which we consolidate and restate as the following two:

I.  Whether the judgment against the Becks on the Masons' lawsuit was supported by sufficient evidence.

II. Whether the judgment against the Becks on their counterclaim was contrary to law.

Affirmed in part, reversed in part.

 We note initially that the Masons have failed to file an appellee's brief in this matter. Accordingly, we may reverse the judgment of the trial court if the Becks can demonstrate prima facie error. *Pettiford v. State* (1987), Ind.App., 504 N.E.2d 324. "Prima facie error" is error at first sight, on first appearance, or "on the face of it." *Id.* at 326; *McBride v. Cox* (1991), Ind. App., 567 N.E.2d 130, 134, *trans. pending.* Applying this less rigorous standard, we find that the Becks are entitled to relief.

On January 29, 1990, the Masons signed an agreement for the purchase of the Becks' house, and made a $1,000 deposit on the property. Pertinent to this deposit, the purchase agreement stated:

> Should Purchaser fail to complete said sale for any reason other than defective title, or because Purchaser's loan is refused, the deposit shall be retained by seller as liquidated damages and not as a penalty or a forfeiture.

Record, p. 241.

After the contract was signed, the Becks entered into an agreement to purchase another home. Meanwhile, the Masons learned that a first-time home buyers' loan with a 9.32% rate of interest was to become available sometime in February, 1990. The Masons applied for this loan, but were rejected because their income exceeded allowable guidelines. Thereafter the Masons received approval for a conventional mortgage loan with an interest rate of 10.125%. The Masons rejected the conventional mortgage, and made no other attempts to obtain financing. The Masons advised the Becks that their loan application had been denied and asked for the return of their deposit. The Becks, who discovered that the Masons had been approved for a loan, kept the deposit money, and the Masons sued for its return.

 The Becks first contend that the judgment on the Masons' claim was not supported by sufficient evidence. When a party seeks to reverse an adverse judgment on the basis of insufficient evidence, we will not weigh the evidence or assess witness credibility. *In re Paternity of Tompkins* (1989), Ind.App., 542 N.E.2d 1009, 1013. Rather, we will look to the evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom, and will affirm if there is substantial evidence of probative value to support the judgment. *Id.* We also observe that the trial court entered a general judgment in this case. We will affirm a general judgment on any theory supported by the evidence. *Hollars v. Randall* (1990), Ind. App., 554 N.E.2d 1177, 1178.

The Becks argue that the evidence does not establish that the Masons made a reasonable, good faith effort to obtain financing. We agree. When a real estate purchase agreement is conditioned on the purchaser obtaining financing, the purchaser has the implied obligation to make a reasonable and good faith effort to satisfy such a condition. *Billman v. Hensel* (1979), 181 Ind.App. 272, 391 N.E.2d 671. In *Billman,* the vendors sued to recover a $1,000 earnest money/liquidated damages deposit required by the contract. The agreement contained a "subject to financing" clause similar to that found in this case. After the purchasers signed the agreement, their parents inspected the real estate. Later, the parents expressed their disapproval of the property, and the purchasers rescinded the agreement, saying they would not be able to complete financing. The purchasers never made a formal loan application, and prior to that time had told the vendors that they had all the money needed to complete the sale. Finding an implied obligation to use good faith and reasonable efforts to satisfy the "subject to financing" clause, the court in *Billman* stated:

> Such an interpretation not only comports with the reasonable expectations of the parties, but is a logical extension of the sound rule of contract law that a promisor cannot rely upon the existence of a condition precedent to excuse his performance where the promisor, himself, prevents performance of the condition.

*Id.* at 274–75, 391 N.E.2d at 673.

The Masons, who supplied the purchase agreement form, did not condition their purchase on their ability to obtain a first-time home buyers' loan at 9.32%. In fact, the Masons did not become aware of this rate until after they signed the contract. The Masons completed only one application for a loan, that for the first-time home buyers' loan. This loan was denied because the Masons made too much money, not because they could not afford the payments. A loan officer resubmitted the application in the hopes of securing a conventional loan for the Masons. Although this loan was approved, the Masons advised the Becks that they had been rejected.

Testimony from the Masons revealed that they were not prepared to spend the additional $10.00 to $40.00 monthly that would have been payable under the conventional mortgage rather than the first-time home buyers' loan. This evidence is irrelevant. The condition allowing the vendor to keep the deposit money unless the purchasers' loan is refused does not allow the Masons to abandon the purchase agreement if they later become dissatisfied with the property or in hindsight believe that they have entered into a contract imprudently. *See Keliher v. Cure* (1989), Ind. App., 534 N.E.2d 1133; *Nicholls v. Pitoukkas* (1986), Ind.App., 491 N.E.2d 574. There is no evidence of probative value to support the conclusion that the Masons fulfilled their obligation to use reasonable and good faith efforts to secure financing. The Becks have made a prima facie case entitling them to relief, and the judgment in favor of the Masons on their breach of contract claim is reversed.

The Becks also contend that the judgment against them on their counterclaim was contrary to law. A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *In re Marriage of Wooten* (1990), Ind.App., 563 N.E.2d 636, 638. In addressing the question of whether a negative judgment is contrary to law, we consider only the evidence on the record most favorable to the prevailing party without reweighing the evidence or judging the credibility of the witnesses. *Id.* As the trial judge entered a general judgment against the Becks on their counterclaim, we will affirm upon any theory supported by the evidence. *Hollars, supra,* at 1178.

The Becks counterclaimed to collect $7,243.66 in damages allegedly suffered as a result of the Masons' failure to complete the contract, maintaining that their receipt of the $1,000 liquidated damage deposit does not preclude them from

collecting the balance of their damages, or $6,243.66. We disagree.

The operation and effect of stipulations for the payment of liquidated damages on the remedies of the parties to a contract depend on the intention of the parties. Thus, if the parties to the contract intended that the remedy of liquidated damages should be the exclusive remedy for a breach, the court will give effect to that intention. On the other hand, a liquidated damages clause does not per se restrict the remedies of the parties, and, where it does not appear that the parties so intended the clause would not be construed to restrict the remedies to the recovery of the liquidated damages.

9 I.L.E. Damages § 108, p. 267 (1971) (citing *Fletcher v. U.S.* (N.D.Ind.1967), 303 F.Supp. 583, *aff'd*, (7th Cir.1971), 436 F.2d 413) (footnotes omitted). The liquidated damages clause in this case does not per se restrict the Becks from recovering additional damages. However, the parties expressly designated the deposit as a liquidated damage amount, rather than a penalty or a forfeiture. This designation is not conclusive, but is relevant to ascertain the intent of the parties. *General Bargain Center v. American Alarm Company, Inc.* (1982), Ind.App., 430 N.E.2d 407. The description of the deposit as liquidated damages in the event of a breach indicates the parties intended to so limit their remedies.

The Becks rely on the *Keliher* case, *supra*, to support their contention that the forfeiture of deposit money was not declared to be the exclusive relief available to them. Actually, *Keliher* supports a contrary result. The court in *Keliher* was asked to determine whether it was error for the trial court to limit the vendor's recovery to a $5,000 earnest money deposit that was "forfeited" under the terms of the contract. 534 N.E.2d at 1138–39. Observing that the vendor amended his counterclaim to seek retention of the earnest money deposit as "liquidated damages," the court deemed it unnecessary to address the issues raised by the counterclaim because the vendor received the relief prayed for. *Id.* at 1139. The *Keliher* court noted, however, that the purchase agreement did not declare forfeiture to be the exclusive relief available to the vendor, and that it would have been error to limit recovery "unless implicit in that judgment was a conclusion that the earnest money constituted liquidated damages for the [purchasers'] breach. If the $5,000 *was not a liquidated damage amount,* [the vendor] may have proved compensatory damages over and above the $5,000 amount." *Id.* at 1138 (emphasis added). Therefore, dicta from the *Keliher* case would seem to indicate that if an earnest money deposit constitutes liquidated damages for a purchaser's breach, it would not be error for a court to limit recovery to the amount of the deposit.

The Becks cite to a number of cases for the proposition that liquidated damage clauses are enforceable where the nature of the contract is such that upon breach the resulting damages would be uncertain and difficult to ascertain. *See, e.g., General Bargain Center, supra; Zalewski v. Simpson* (1982), Ind.App., 435 N.E.2d 74, *trans. denied; Czeck v. Van Helsland* (1968), 143 Ind.App. 460, 241 N.E.2d 272. These cases are factually dissimilar to the case at bar. In *General Bargain Center,* the court passed upon the validity of a liquidated damages provision that was in actuality an exculpatory clause. 430 N.E.2d 407. In *Zalewski,* the appellant alleged the liquidated damages were unreasonably excessive, thereby triggering the traditional test for determining the enforceability of such clauses. 435 N.E.2d at 77–78. The court in *Czeck* rejected a liquidation clause that had "all the earmarks of a penalty provision." 143 Ind.App. at 464, 241 N.E.2d at 275. These cases are not relevant to the issue of whether the Becks are entitled to damages greater than those specified in the contract as liquidated damages.

The Becks argue that because there is no provision in the contract limiting recovery, they should be permitted to pursue damages in excess of the deposit amount. They overlook the fact that a liquidation clause itself limits damages to a specified amount. To hold otherwise would

be to render every liquidation clause a nullity, freely adhered to or disregarded as the contracting parties see fit. We believe the better practice, one that comports with the reasonable expectations of the contracting parties, would be to give force and effect to unambiguous liquidation clauses (such as the provision in this case). Where the clause is ambiguous, resort may be had to extraneous evidence to determine whether the parties intended damages to be truly liquidated or not. Parties may further stipulate that liquidated damages are supplementary to the rights and remedies of the non-breaching party (provided the damages are not penal in nature), *see Czeck, supra,* at 462–64, 241 N.E.2d at 274, or merely require that the deposit be forfeited. *See Keliher, supra,* at 1138–39.

Considering the evidence most favorable to the Masons, we cannot say that the evidence leads solely to a conclusion contrary to that reached by the trial court. *See Marriage of Wooten, supra,* at 638. The court could have properly determined that the contract adequately expressed the parties' intent to limit damages to the amount of the deposit. The liquidation clause is unambiguous on this point. The judgment against the Becks on their counterclaim is not contrary to law.

The judgment in favor of the Masons on their complaint is reversed. The judgment against the Becks on their counterclaim is affirmed.

GARRARD, J., concurs as to Part I and concurs in result as to Part II.

CONOVER, J., concurs.