Howard WEINBERG, M.D., Appellant–
Defendant Below,

v.

Sheryl BESS, Appellee–Plaintiff Below.

No. 45A03–9309–CV–311.

Court of Appeals of Indiana,
Third District.

Aug. 10, 1994.

Rehearing Denied Nov. 3, 1994.

David C. Jensen, Gregory A. Crisman, Eichhorn, Eichhorn & Link, Hammond, for appellant.

STATON, Presiding Judge.

Dr. Howard Weinberg ("Dr. Weinberg") appeals the trial court's interlocutory order denying his motion for summary judgment. He raises the sole (restated) issue of whether Sheryl Bess' action against him is barred by the statute of limitations.

We reverse and remand.

■ We note initially that Bess did not file an appellee's brief in this matter. Accordingly, we may reverse if Dr. Weinberg demonstrates prima facie error. *Beck v. Mason* (1991), Ind.App., 580 N.E.2d 290, 291. "Prima facie error" is error at first sight or "on the face of it." *Id.* Applying this less rigorous standard, we conclude that Dr. Weinberg is entitled to summary judgment.

The facts most favorable to Sheryl Bess reveal that Bess first visited the office of Dr. Weinberg, a plastic surgeon, on August 23, 1984, at which time Bess was diagnosed with bilateral fibrocystic disease. Dr. Weinberg performed a bilateral subcutaneous mastectomy on Bess on October 18, 1984. On January 17, 1985, Dr. Weinberg performed reconstructive surgery on Bess, at which time he placed breast implants containing silicone gel. Before performing the surgery, Dr. Weinberg told Bess that he intended to use saline implants.

After her surgery, Bess visited Dr. Weinberg's office several times for follow-up care. Her last office visit was on April 3, 1986. Although she had an appointment scheduled for July 3, 1986, she did not keep it. Bess had no further contact with Dr. Weinberg until June 1991, at which time she telephoned his office to inquire about the type of implants she had received during her surgery. A member of Dr. Weinberg's staff informed Bess that Bess had received saline implants. Bess contacted Dr. Weinberg's office again sometime between January and March of 1992 because she was experiencing pain in her right breast. Dr. Weinberg told her not to worry because her implants were saline rather than silicone, and he scheduled an appointment for Bess to have a mammogram the next day. Dr. Weinberg examined Bess in his office the day after her mammogram.

In May 1992, Bess became aware of media coverage regarding the dangers of silicone gel implants. She then went to the hospital to review her records, and discovered for the first time that her implants consisted primarily of silicone gel. Bess filed an action for medical malpractice against Dr. Weinberg on July 22, 1992. Dr. Weinberg filed a motion for summary judgment on grounds that Bess' claim was barred by the statute of limitations, which the trial court denied.

■ When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co., Inc.* (1993), Ind. App., 609 N.E.2d 1123, 1127, *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the non-movant. *Ramon, supra.*

Indiana Code 16–9.5–3–1 (repealed and replaced by Indiana Code 27–12–7–1 (1993)) provides that a medical malpractice claim must be brought within two years after the date of the alleged act, omission, or neglect. Indiana courts have repeatedly held that this two-year period begins to run at the occurrence of the negligence rather than at the time the negligence is discovered. *O'Neal v. Throop* (1992), Ind.App., 596 N.E.2d 984, 986, *trans. denied.* Clearly, Bess' action was brought more than two years after her breast implantation surgery. However, the

trial court concluded that there remained genuine issues of material fact as to whether the statute of limitations was tolled under the doctrine of fraudulent concealment.

◼ The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, conceals material facts from the plaintiff to prevent discovery of the wrong. *Yarnell v. Hurley* (1991), Ind.App., 572 N.E.2d 1312, 1314, *trans. denied.* Equitable estoppel may arise either from active efforts to conceal the malpractice or from a failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient. *Id.* The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud. This constructive fraud terminates at the conclusion of the physician-patient relationship, at which time the statute of limitations begins to run. *Id.* The statute will also commence to run after a patient learns of the malpractice, or discovers information which would lead to the discovery of the malpractice if the patient exercises reasonable diligence. Thus, fraudulent concealment tolls the running of the statute of limitations until either the physician-patient relationship is terminated, the patient discovers the malpractice or the patient learns information which in the exercise of due diligence would lead to the discovery of the malpractice. *Id.*

◼ Dr. Weinberg argues that the physician-patient relationship terminated no later than July 3, 1986, the date on which Bess missed her last scheduled appointment. Thus, her action was time-barred when it was not filed by July 4, 1988. Bess' argument before the trial court was that the physician-patient relationship did not terminate until May 1992. Bess gave the following reasons in support thereof: (1) Dr. Weinberg served as her sole physician with respect to her breast implants; (2) Dr. Weinberg continued to render advice and treatment to Bess until as late as March 1992; and (3) it was Bess' understanding that she could contact Dr. Weinberg as needed to continue or initiate medical procedures with

respect to her implants. Even if we assume that Bess' allegations are true, we agree with the trial court that, as a matter of law, the physician-patient relationship terminated no later than July 3, 1986.

◼ We recognize that a physician-patient relationship does not necessarily end with the patient's last office visit. *Yarnell, supra,* at 1315. However, a patient's bare assertion that she continued to rely upon a physician for medical treatment is insufficient as a matter of law to create a factual issue. *Babcock v. Lafayette Home Hospital, Woman's Clinic* (1992), Ind.App., 587 N.E.2d 1320, 1324. By her own account, Bess received neither advice nor treatment from Dr. Weinberg for approximately five years after her missed appointment on July 3, 1986. In fact, the record before us is devoid of any evidence of a continuing relationship between Dr. Weinberg and Bess during that time. We decline to hold that a patient can revive a physician-patient relationship after the statute of limitations period has expired, simply by making a subsequent appointment with the physician. Such a result would frustrate the legislature's intent to impose limits on medical malpractice actions in order to hold down the cost of medical care. The facts alleged by Bess do not create a genuine issue of material fact as to the termination date of the physician-patient relationship.

Reversed and remanded with instructions to enter summary judgment consistent with this opinion.

GARRARD, J., concurs in result.

ROBERTSON, J., dissents and files separate opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent.

This case falls under the holding of *O'Neal v. Throop* (1992), Ind.App., 596 N.E.2d 984, *trans. denied,* which states that the doctrine of fraudulent concealment applies when the defendant deceives or violates a duty which conceals material facts from the plaintiff to prevent the discovery of a wrong. I believe

there is a genuine issue of material fact and would, accordingly, affirm the trial court.