Anthony A. **UMOLU, M.D.,**
**Appellant–Defendant,**

**v.**

**Terrence ROSOLIK and Tammy Rosolik, Husband and Wife, Appellees–Plaintiffs.**

**No. 46A03–9509–CV–293.**

Court of Appeals of Indiana.

June 12, 1996.

Rehearing Denied Aug. 13, 1996.

Mark A. Lienhoop, Newby, Lewis, Kaminski & Jones, LaPorte, for Appellant.

Craig V. Braje, Braje & Nelson, Michigan City, for Appellees.

## OPINION

STATON, Judge.

Anthony A. Umolu, M.D., brings this interlocutory appeal from the denial of his motion for summary judgment in this medical malpractice lawsuit brought by Terrence Rosolik and Tammy Rosolik (collectively "Rosoliks"). The sole issue on appeal is whether Rosoliks' action is barred by the medical malpractice statute of limitations.

We reverse and remand.

The facts most favorable to the nonmovant, Rosoliks, reveal that Terrence developed a skin condition and sought treatment from Dr. Umolu. Terrence was initially treated by Dr. Umolu in a hospital emergency room. Thereafter, Dr. Umolu treated Terrence for the same condition in his offices from March 11, 1988 to May 22, 1988. Dr. Umolu diagnosed Terrence's condition as urticaria and prescribed corticosteroids. Dr. Umolu's last prescription of corticosteroids was filled by Terrence on June 11, 1988, and was for a six-day course of treatment. The last time Dr. Umolu saw Terrence was on July 31, 1989, for unrelated chest pains. A few months later, Terrence saw a dermatologist for an unrelated condition.

In April 1991, almost three years after his last prescription for corticosteroids, Terrence began experiencing pain in his thigh and hip. His family physician referred him to Dr. Anabel Juhasz. On May 1, 1991, Dr. Juhasz diagnosed Terrence with bilateral avascular necrosis in both hips. On August 5, 1991, Rosoliks filed a proposed complaint with the Indiana Department of Insurance. The Department of Insurance issued an adverse ruling against Rosoliks on May 28, 1993. Thereafter, the Rosoliks filed a state court complaint on August 12, 1993. In their complaint, Rosoliks allege Dr. Umolu committed malpractice by: failing to advise Terrence of the probable irreversible damage caused by prolonged steroid use; failing to advise Terrence of the side effects of steroid use; failing to supervise Terrence's steroid use; and failing to institute and utilize reasonable and necessary follow-up procedures. Dr. Umolu sought summary judgment arguing that the statute of limitations had run against Rosoliks' claim. The trial court denied Dr. Umolu's motion for summary judgment and certified the order for appeal. This court accepted Dr. Umolu's interlocutory appeal.

When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co., Inc.*, 609 N.E.2d 1123, 1127 (Ind.Ct.App.1993), *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C). The movant bears the burden of establishing the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the nonmovant. *Ramon, supra.*

IND.CODE § 27–12–7–1 (1993) (formerly IND.CODE § 16–9.5–3–1) provides that a medical malpractice claim must be brought within two years after the date of the alleged act, omission or neglect. Indiana courts have repeatedly held that this two-year period begins to run at the occurrence of the negligence rather than at the time the negligence is discovered. *Weinberg v. Bess,* 638 N.E.2d 841, 843 (Ind.Ct.App.1994), *reh. denied.* Here, Rosoliks' claim was brought more than two years after being treated by Dr. Umolu. However, the trial court concluded that the statute of limitations did not bar Rosoliks' claim based upon the doctrine of fraudulent concealment.

The doctrine of fraudulent concealment tolls the statute of limitations in certain circumstances. It operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or violation of a duty, conceals material facts from the plaintiff to prevent discovery of the wrong. *Id.* at 844; *Yarnell v. Hurley,* 572 N.E.2d 1312, 1314 (Ind.Ct.App.1991), *trans. denied.* Under the fraudulent concealment doctrine, the plaintiff does not have two full years from the discovery of the alleged malpractice in which to file a claim. Instead, the law requires that the plaintiff institute an action within a reasonable time after discovery of the alleged malpractice. *Yarnell, supra,* at 1314.

The Indiana Supreme Court recently analyzed the doctrine of fraudulent concealment in *Hughes v. Glaese,* 659 N.E.2d 516 (Ind.1995). The court denoted two branches of the fraudulent concealment doctrine: 1) active concealment; and 2) passive or constructive concealment. The difference between the two branches being the point in time which a plaintiff may commence a malpractice action. *Id.* at 519. When the concealment is constructive, the plaintiff's duty of diligence is triggered by the termination of the physician-patient relationship or by the

actual discovery or reasonable opportunity to discover the malpractice, whichever occurs first; but when the concealment is active, the duty of diligence does not commence until such actual or reasonably possible discovery. *Id.*

Rosoliks do not present any evidence nor do they argue that Dr. Umolu participated in active fraudulent concealment.[1] Instead, they contend that Dr. Umolu engaged in constructive fraud by failing to disclose that which he knew, or in the exercise of reasonable care, should have known. Appellee's Brief at 7.

In *Hughes,* our supreme court held that where concealment results from a breach of the duty to inform by reason of a confidential relationship, *concealment ceases to exist when the relationship is terminated. Hughes, supra,* at 520 (quoting *Guy v. Schuldt,* 236 Ind. 101, 109, 138 N.E.2d 891, 895 (1956)) (emphasis added). Therefore, any alleged concealment ceased to exist when the relationship between Dr. Umolu and Terrence ended.

This court has set forth factors to consider in determining when the physician-patient relationship ends:

The subjective views of the parties are important and a consideration must be given to objective factors, including, but not limited to, the frequency of the visits, whether a course of treatment was prescribed by the doctor (to be followed with or without consultation), the nature of the illness, the nature of the physician's practice and whether the patient began consulting other physicians for the same malady.

*Frady v. Hedgcock,* 497 N.E.2d 620, 623 (Ind. Ct.App.1986), *trans. denied.* Here, the undisputed facts reveal that Dr. Umolu last treated Terrence on July 31, 1989 for chest pains unrelated to the corticosteroid pre-

---

1. Rosoliks argue that the statute of limitations was tolled until May 1, 1991, when Terrence was diagnosed with bilateral avascular necrosis in both hips. Appellee's Brief at 7. However, they argue that Dr. Umolu engaged in constructive fraudulent concealment, which only tolls the duty of diligence until the termination of the physician-patient relationship or by the actual discovery or reasonable opportunity to discover the malpractice, *whichever occurs first. Hughes, supra,* at 519 (emphasis added). Had Rosoliks argued that Dr. Umolu engaged in active fraud, the duty of diligence would not commence until actual or reasonably possible discovery. *Id.*

scription.[2] On October 24, 1989, Terrence consulted another physician, a dermatologist, for another unrelated condition. Thereafter, Terrence consulted other physicians and never returned to Dr. Umolu. Thus, the physician-patient relationship ended and any concealment ceased to exist on July 31, 1989.

Moreover, the record is devoid of any evidence of a continuing relationship between Dr. Umolu and Terrence. *See Weinberg, supra*, at 844; *Babcock v. Lafayette Home Hospital*, 587 N.E.2d 1320, 1324 (Ind. Ct.App.1992). When a doctor prescribes a course of treatment to be followed for a period of time, a constructive fraud can be found which will delay the running of the statute of limitations for the time the doctor has indicated. *Jones v. Cloyd*, 534 N.E.2d 257, 258 (Ind.Ct.App.1989). However, where no such representations are made, the patient's reliance does not continue beyond the time he and the doctor ceased their association. *Id.* Terrence does not argue that Dr. Umolu prescribed any treatment beyond July 31, 1989, nor does he argue that Dr. Umolu had actual knowledge that he exhibited signs of avascular necrosis. Instead, Rosoliks premise their claim solely upon Dr. Umolu's failure to perform a duty to disclose based upon their relationship.[3] Where concealment results from a breach of a duty to inform by reason of a confidential relationship, concealment ceases to exist when the relationship is terminated. *Hughes, supra*, at 520.

Because the physician-patient relationship ended on July 31, 1989, the filing of the proposed complaint on August 5, 1991, was untimely even applying the doctrine of

fraudulent concealment.[4] The facts alleged by Rosoliks do not create a genuine issue of material fact as to the termination date of the physician-patient relationship. The trial court should have granted Dr. Umolu's motion for summary judgment, because, as a matter of law, Dr. Umolu's duty to disclose and Terrence's reliance upon him ended with the termination of their physician-patient relationship. *See Jones, supra*, at 258–59. We must reverse and remand with instructions that Dr. Umolu's motion for summary judgment be granted.

Reversed and remanded.

HOFFMAN, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

The physician-patient relationship with regard to the condition resulting in the alleged act of malpractice, i.e., prescribing the steroids without adequate warning or monitoring, ended June 17, 1988. This was the last day of the time period during which the steroids were to be taken under the prescription filled on June 11, 1988. A new and different physician-patient relationship was created on June 19, 1989 and continued until July 31, 1989 with regard to the unrelated chest pains reported by Rosolik. In my estimation, therefore, the statute of limitations expired June 16, 1990, rather than July 30, 1991. Be that as it may, the proposed complaint was not filed with the Department of Insurance

---

2. We note that in Terrence's affidavit he states that he "last treated with Dr. Umolu on July 31, 1988." Record at 54. However, a reference in Rosoliks' brief indicates that the last date of treatment was July 31, 1989. Appellee's Brief at 1. In addition, Dr. Umolu's affidavit indicates that "July 31, 1989 was the last time [he] saw Mr. Rosolik." Record at 27. We surmise from these facts that the last time Dr. Umolu treated Terrence was July 31, 1989, not July 31, 1988.

3. We note that even if Terrence had alleged that he continued to rely upon Dr. Umolu for medical treatment until October 24, 1989, when he first saw another physician, this argument would fail. A patient's bare assertion that he continued to rely upon a physician for medical treatment is

insufficient as a matter of law to create a factual issue. *Weinberg, supra*, at 844.

4. We also agree with Dr. Umolu's contention that the doctrine of continuing wrong does not apply in this case. The continuing wrong doctrine applies where an entire course of conduct combines to produce an injury. *Yarnell, supra*, at 1315. The facts presented here are similar to those in *Yarnell*, in that the only negligent acts alleged which could be of a continuing nature were the failure to diagnose and treat the patient's condition. In *Yarnell*, this court concluded that there was no continuing wrong after the physician-patient relationship ended. *Id.* Similarly, the continuing wrong doctrine is not applicable here.

until August 5, 1991,[5] after the expiration of both periods. No matter which period is utilized for statute of limitations purposes, the complaint was not timely.

---

**5.** The statute of limitations is effectively tolled by the filing of a proposed complaint with the Department of Insurance. *Miller v. Terre Haute Regional Hosp.* (1992) Ind., 603 N.E.2d 861, and if the defendant is a qualified health care provid- er under the Medical Malpractice Act, such filing satisfies the statute of limitations. *See Yarnell v. Hurley* (1991) Ind.App., 572 N.E.2d 1312, *trans. denied.*