### Howard WEINBERG, M.D., Appellant (Defendant),

v.

### Sheryl BESS, Appellee (Plaintiff).

No. 45S03–9503–CV–307.

Supreme Court of Indiana.

Oct. 8, 1999.

---

David C. Jensen, Gregory A. Crisman, Eichhorn, Eichhorn & Link, Hammond, Indiana, Attorneys for Appellant.

Anthony DeBonis, Jr., Krista Smith MacLennan, Terrance L. Smith, Julie R. Fouts, Smith & DeBonis, East Chicago, Indiana, Vernon J. Petri, Indianapolis, Indiana, Attorneys for Appellee.

**ON PETITION TO TRANSFER**

SELBY, J.

Sheryl Bess, Appellee/Petitioner and Plaintiff below, seeks review of the Court of Appeals' grant of summary judgment in favor of Howard Weinberg, M.D., Appellant and Defendant below. Dr. Weinberg argued that the two year statute of limitations for medical malpractice claims barred Bess's suit. The trial court denied Dr. Weinberg's motion for summary judgment finding that a genuine issue of material fact remained as to whether the statute of limitations was tolled by fraudulent concealment. In *Weinberg v. Bess*, the Court of Appeals reversed the trial court's denial of summary judgment, stating that "[t]he facts alleged by Bess do not create a genuine issue of material fact as to the termination date of the physician-patient relationship." 638 N.E.2d at 844. The Court of Appeals found that Bess's relationship with Dr. Weinberg terminated on July 3, 1986, and, therefore, that her action was barred by the statute of limitations when she did not file it by July 4, 1988. In her complaint, Bess argued that Dr. Weinberg's failure to disclose material facts and affirmative misrepresentations prevented her from discovering the "wrongful cause of her injuries at an earlier time." (P.

Compl. at 9; R. at 27.) Bess also alleged before the trial court that the physician-patient relationship with Dr. Weinberg did not end until May 1992, therefore giving her until May 1994 to file her malpractice suit against Dr. Weinberg. Bess filed her complaint on July 22, 1992.

In *Martin v. Richey*, we found the current medical malpractice statute of limitations, Indiana Code § 34–18–7–1(b) (1998) (repealing § 27–12–7–1 (1993)), to be invalid as applied to the plaintiff because the plaintiff was unable to discover her tort claim before the expiration of the limitations period. *See* 711 N.E.2d 1273, 1284 (Ind.1999). We held that to bar the plaintiff in *Martin* from pursuing her tort claim would violate both the Privileges and Immunities Clause, Article 1, § 23, and the Open Courts Law Clause, Article 1, § 12, of the Indiana Constitution. *See id.* at 1285. We find that the holding of *Martin* requires that Bess be allowed to proceed with her medical malpractice and fraud claims, and therefore reverse the Court of Appeals' grant of summary judgment in favor of the Defendant and remand to the trial court for proceedings consistent with this opinion.

The facts and issues in this case are similar to those in *Halbe v. Weinberg*, 717 N.E.2d 876 (Ind.1999), which we have also decided today.

FACTS AND PROCEDURAL HISTORY

The facts viewed in the light most favorable to Bess, the nonmovant, are as follows. On August 23, 1984, Bess visited Dr. Weinberg, a licensed physician certified by the American Board of Plastic and Reconstructive Surgery, who diagnosed her with bilateral fibrocystic disease of the breasts. This was Bess's first visit to Dr. Weinberg. Two months later, on October 18, 1984, Dr. Weinberg performed a double mastectomy [1] on Bess, and in January 1985

---

1. Specifically, Dr. Weinberg performed a bilateral subcutaneous mastectomy via the mas-

topexy approach. This procedure involves "excision of the breast tissues, but sparing the

he gave her breast implants as part of the reconstructive procedure. The implants were composed of polyurethane coated silicone gel. Bess received several follow-up treatments and examinations from Dr. Weinberg through April 3, 1986. Bess scheduled but missed an appointment on July 3, 1986, and eventually moved to Ohio for a period of time.

Bess maintains that before the reconstructive surgery Dr. Weinberg showed her samples of saline breast implants and indicated that he would use that type of implant in her surgery. Bess stated in an affidavit that Weinberg told her that he "only used saline implants because silicone implants were considered dangerous." (R. at 93.) Dr. Weinberg denies these allegations but does not affirmatively contend that he ever told Bess he was going to use silicone implants.[2]

By the early 1990s, Bess had returned to Indiana. In June 1991, Bess called Dr. Weinberg's office to inquire about the contents of her implants and an employee told her that she had received saline implants. Sometime in January–March 1992, Bess began to experience severe pain in her right breast, pain which she attributes to the silicone implants. Bess also experienced a host of other maladies[3] for which she sought treatment from other physicians and alleges that these ailments were also caused by the silicone implants. Upon experiencing the pain in her breast, Bess contacted Dr. Weinberg. Bess alleges Dr. Weinberg told her not to worry about the implant because her implants were saline and any pain she might be experiencing from the saline would not be harmful because it would be just like "putting salt into an open wound." (R. at 93.) Nonetheless, Dr. Weinberg instructed Bess to undergo a mammogram, perhaps at Bess's insistence. Dr. Weinberg also examined Bess in his office after she had undergone the mammogram.[4]

Bess claims that in May 1992 she first became aware of media reports about health symptoms experienced by some women with silicone implants. Bess called

skin, nipple, and areola," and it is "usually followed by implantation of a prosthesis." Stedman's Medical Dictionary 925 (25th ed.1990).

2. Dr. Weinberg attempts to deconstruct the distinction between silicone and saline breast implants. He argues that while silicone implants are composed roughly of 95 % silicone, even saline implants contain about 5 % silicone. Dr. Weinberg essentially suggests that Bess is quibbling over numbers because either type of implant contains silicone. The trial court characterized counsel's argument as "clever." (R. at 167.) We find it to be an attempted end-run on a pivotal issue in Bess's complaint. The numbers go to the core of Bess's argument. She claims that Dr. Weinberg said her implants would contain mainly saline, but, as it turns out, they contained mainly silicone.

Dr. Weinberg counters that the distinction between silicone and saline implants was not a material fact in 1985 because health risks associated with silicone implants had not yet become widely known. His argument is contrary to the evidence. Bess claims that Dr. Weinberg himself asserted that silicone implants "were considered dangerous," (R. at 28, 93) and Dr. Weinberg's affidavit does not contradict this claim. Dr. Weinberg designated the complaint, Plaintiff's answers to his interrogatories, his answer, his affidavit, and the affidavit of Diana Pitcher as his evidence for summary judgment. See Ind. Trial Rule 56(C). Apart from a general denial in his answer, the record contains no evidence about what Dr. Weinberg knew in 1985 regarding the health risks associated with silicone implants. Moreover, in reviewing a motion for summary judgment, we must resolve all factual disputes in favor of the non-movant.

3. The ailments included Chronic Fatigue Syndrome, chronic pain in Bess's legs and lower back, sensitivity to light, strawberry moles, chronic headaches, transient memory loss, loss of teeth, bluing of fingers, excessive salivation, ulcers, slow colon, mental anguish, chronic diarrhea, difficulty sleeping, loss of bladder control, chronic and recurrent infections, weight changes, and numbness and tingling in extremities.

4. The record does not disclose the results of the mammogram or physical examination, but it does not appear that Dr. Weinberg prescribed any treatment or follow-up examinations.

Dr. Weinberg's office again to confirm that she did not have silicone implants. This time, an employee declined to answer the question, claiming not to have the information. Bess went directly to the hospital where Dr. Weinberg had performed her reconstructive surgery and learned from the records on file that Dr. Weinberg had used silicone implants.

Two months later, and over eight years after her surgery, Bess filed the present action. Bess asserted strict liability and negligence claims against both the manufacturer of the breast implants and the makers of the polyurethane foam and silicone gel the implants contained. In the same complaint, Bess sued Dr. Weinberg for medical malpractice, alleging that Dr. Weinberg breached the duty of care he owed to Bess by (1) "failing to make reasonable disclosures of material facts relevant to her decision to consent to surgical placement of breast implants,"[5] (R. at 27), and by (2) "making affirmative misrepresentations ... regarding the breast implants used in the subject surgery." (R. at 27.) Bess alleges that the aforementioned breaches were the cause of her injuries and constitute negligence. Bess further alleges that Dr. Weinberg committed fraud by representing to Bess that: (1) he "would not place breast implants predominantly containing silicone gel ... in Bess's body," (2) the implants placed in Bess "predominantly contained saline solution, rather than silicone gel," (3) the implants would last Bess's lifetime, and (4) the implant solution would not harm Bess if it entered her body because it consisted of salt water.[6] (R. at 28.)

Dr. Weinberg moved for summary judgment, arguing that Bess's claims were time-barred under the statute of limitations. Essentially, Dr. Weinberg contended that, even taking Bess's allegations as true, the statute of limitations would have been tolled by fraud or misrepresentations only until the termination of their relationship in 1986.

Bess's response was two-fold. She argued that the non-disclosures amounted to fraudulent concealment, which estopped Dr. Weinberg from asserting the two-year limit until May 1992, when she claims the physician-patient relationship terminated. Alternatively, Bess maintained that Dr. Weinberg's affirmative misrepresentations had the effect of tolling the statute of limitations until May 1992, when she could "no longer reasonably rely on Defendant Weinberg's misrepresentations." (R. at 87–89.)

The trial court rejected Bess's first contention, finding that the physician-patient relationship and any concomitant disclosure duty terminated in 1986, eight years before Bess filed suit. However, the trial court judge did find that there were sufficient factual disputes regarding the alleged affirmative misrepresentations to estop Dr. Weinberg from asserting the statute of limitations in the summary judgment proceeding.

Dr. Weinberg brought an interlocutory appeal before the Court of Appeals, claiming the trial court erred in finding that the doctrine of fraudulent concealment estopped him from asserting the statute of limitations as a bar to Bess's action and

---

**5.** Plaintiff has articulated an informed consent claim here. Under the doctrine of informed consent, a physician must disclose the facts and risks of a treatment which a reasonably prudent physician would be expected to disclose under like circumstances, and which a reasonable person would want to know. See Culbertson v. Mernitz, 602 N.E.2d 98, 100 (Ind.1992).

**6.** We note that Plaintiff has not alleged that Dr. Weinberg failed to warn her of the dangers of silicone implants as he became aware of them. There is nothing in the record which indicates Dr. Weinberg has ever received a recall notice from a breast implant manufacturer, which would have necessitated his notifying all current and former patients with breast implants of the dangers associated with them. See Harris v. Raymond, 715 N.E.2d 388, 393 (Ind.1999) (finding a duty to warn former and current patients about safety concerns that arise regarding medical devices inserted into and left in patients' bodies).

that issues of material fact remained. The Court of Appeals reversed and remanded with instructions to the trial court to enter summary judgment. *See Weinberg v. Bess*, 638 N.E.2d 841 (Ind.Ct.App.1994).[7]

Bess petitioned to transfer and claimed that the Court of Appeals had not properly addressed the impact of the affirmative representations on her fraudulent concealment argument. According to Bess, this failure prejudiced her by reversing a favorable trial court holding. Bess further argues that the date of the termination of a physician-patient relationship is not a matter of law, as the Court of Appeals decided, but is a determination which must be left to the fact-finder.[8]

 We granted transfer, *Weinberg v. Bess*, No. 45S03–9503–CV–307 (Ind. Mar.3, 1995), and now discuss Bess's claim in light of our decision in *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999).[9] We also briefly discuss the doctrine of fraudulent concealment, but note that a decision in Bess's favor with regard to the statute of limitations question makes it unnecessary for us to exercise our equity power under the doctrine of fraudulent concealment.

## DISCUSSION

 We reverse the Court of Appeals' grant of summary judgment in favor of Defendant in light of our holding in *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999), which established that the two-year medical malpractice statute of limitations is unconstitutional as applied to plaintiffs who are unable to discover their medical malpractice claims before the expiration of the limitations period. *See id.* at 1284–85. Even with the exercise of reasonable diligence, Bess could not have discovered, and indeed did not discover, her medical malpractice claim until May 1992. On July 22, 1992, only two months after Bess learned her breast implants contained silicone, she filed suit against Dr. Weinberg. Thus, her claim was filed well within the statutory period of two years.

In *Martin*, we found that it would violate the Privileges and Immunities Clause, Article I, § 23, and the Open Courts Law Clause, Article I, § 12, of our Constitution to bar a plaintiff from bringing a medical malpractice claim which she could not have discovered before the expiration of the statute of limitations. *See* 711 N.E.2d at 1285. The plaintiff in *Martin* claimed that

7. The Court of Appeals noted that it was applying a "less rigorous" standard of review because Bess had not filed an appellate brief. *Weinberg*, 638 N.E.2d at 843.

8. Bess argues that the Court of Appeals decision engendered a conflict in Indiana law regarding whether the date of the termination of a physician-patient relationship can be determined as a matter of law, or whether such a determination must be left to the fact-finder. We have reviewed the case law Bess cites, *Adams v. Luros*, 406 N.E.2d 1199 (Ind.Ct.App. 1980), and find no conflict.

9. Dr. Weinberg initially claims that transfer is inappropriate because Bess did not properly preserve her claim by filing an appellate brief when this cause was before the Court of Appeals. We disagree.

A party whose petition for rehearing was denied is entitled to seek transfer of her claim to this Court. However, under the rules in place at the time of this action in the Court of Appeals, a petition to transfer was "limited to only those grounds set forth in the petition for rehearing in the Court of Appeals." *See* Ind. Appellate Rule 11(B) (West 1993). In Bess's petition for rehearing, she alleged that the Court of Appeals erred because it did not address a "substantial question on the record and argued by the parties," namely the issue of fraudulent concealment.

In addition, under Indiana case law, an appellee is not initially required to file a brief. If the appellee opts not to file a brief, the court has the discretion to: 1) order the appellee to file a brief, 2) consider the issues presented by appellant without aid of appellee's arguments, or 3) reverse the lower court's judgment if appellant shows apparent or prima facie error. *See City of Connersville v. Adams*, 122 Ind.App. 581, 584, 105 N.E.2d 912, 913 (1952). The Court of Appeals chose to apply a less rigorous standard under alternative three and issued a decision adverse to Bess's interests. *See Weinberg*, 638 N.E.2d at 843. Indiana's appellate procedures then entitle Bess to petition us for transfer of her case under App. R. 11(B).

the defendant had failed "to diagnose and treat her breast cancer in a timely manner." *Id.* at 1277. She went to the defendant to have him check a lump in her breast and did not consult with any other doctors after he aspirated the lump. *See id.* at 1276–77. Three years later she began to experience increased pain, at which time her malpractice claim would have already expired under an occurrence-based statute of limitations. *See id.* Declining to strike down the statute of limitations, we found it invalid as applied to that plaintiff. *See id.* at 1279. Under *Martin,* a plaintiff need not possess the prescience to file a claim before she knows or has reason to know a claim exists. *See id.* at 1284.

Turning to the instant case, we find that the statute of limitations on Bess's malpractice claim began to run in May 1992, at which time Bess discovered her breast implants contained silicone. Dr. Weinberg inserted implants into Bess's body and Bess alleges that Dr. Weinberg represented to her that he would use saline implants because "silicone implants were considered dangerous." (R. at 93.) The record indicates that Bess instead received breast implants containing silicone. Indeed, the implants consisted of roughly 95 percent silicone gel. Bess had no reason we know of, prior to May 1992, to mistrust her doctor's representations to her that she would receive, and had received, implants containing saline. Therefore, Bess had no reason to suspect she had received silicone implants.[10] Bess was treated for other ailments prior to 1992, but had no reason to suspect a relationship between the ailments and her implants. She did not experience pain in her breast until early 1992. When she experienced pain in her right breast, Bess contacted Dr. Weinberg who ordered a mammogram and examined

Bess. In May 1992, after Bess had heard media reports regarding the dangers of silicone, she again called her doctor to find out the content of her implants. An employee declined to answer Bess's question so Bess went directly to the hospital and, for the first time, learned that her implants contained silicone gel. We see nothing in the record that would lead us to believe that, in the exercise of reasonable diligence, Bess should have had any reason whatsoever to suspect she had a cause of action against her doctor before 1992. In June 1991, when she called the office to inquire about the composition of her implants, Bess may have suspected something was amiss. It was not until May 1992, though, that Bess discovered she did not have the type of breast implant she thought she had received. Under *Martin,* Bess's filing of her claim on July 22, 1992 fell well within the statutory period.

## FRAUDULENT CONCEALMENT

■ The doctrine of fraudulent concealment is an equitable remedy that operates to bar a defendant from asserting the statute of limitations as a defense. Under this doctrine, a defendant who has prevented a plaintiff from discovering an otherwise valid claim, by violation of duty or deception, is estopped from raising a statute of limitations defense. *See Hughes v. Glaese,* 659 N.E.2d 516, 519 (Ind.1995). In the medical malpractice context, the doctrine of fraudulent concealment may operate to toll the statutory period until the termination of the physician-patient relationship, or until the patient did discover, or in the exercise of reasonable diligence should have discovered, the doctor's alleged malpractice. *See id.*

We decline to address Bess's fraudulent concealment claim because our analysis of

---

**10.** Dr. Weinberg places great weight on the fact that, at the time he inserted silicone implants into Bess, the dangers of silicone implants were not known, concluding that his conduct is not actionable now because it would not have been actionable then. We disagree. A question of fact remains regarding the informed consent of the patient, that is, whether Bess consented or would have consented to implants containing silicone. Moreover, Dr. Weinberg's employee affirmatively misrepresented to Bess in June of 1991 that her implants contained saline.

the constitutionality of the statute of limitations as applied to Bess renders unnecessary any discussion of the merits of the fraudulent concealment claim.

### CONCLUSION

We reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

DICKSON, J., concurs.

SULLIVAN, J., concurs in result believing that there was sufficient evidence of fraudulent concealment to deny Weinberg's motion for summary judgment.

BOEHM, J., concurs in result, agreeing with SULLIVAN, J.

SHEPARD, C.J., not participating.