

FILED

Nov 16 2018, 10:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

J. David Agnew
Gregory M. Reger
Maxwell W. McCrite
Lorch Naville Ward, LLC
New Albany, Indiana

ATTORNEY FOR APPELLEES
CHERYL CARRICO & CARLA
COOK

Robert W. Adams III
Adams Law Group
Louisville, Kentucky

ATTORNEY FOR APPELLEE
RHONDA VANCE

John M. Plummer, Jr.
Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gerald F. Scott, <br> *Appellant-Defendant,* <br><br> v. <br><br> Cheryl Carrico (Dillman), Carla Cook (Dillman), and Rhonda K. Vance, <br> *Appellees-Plaintiffs* | November 16, 2018 <br><br> Court of Appeals Case No. 59A01-1712-CT-2878 <br><br> Appeal from the Orange Circuit Court <br><br> The Honorable Joseph L. Claypool, Special Judge <br><br> Trial Court Cause No. 59C01-1606-CT-161 |

**May, Judge.**

[1] Gerald F. Scott appeals the trial court's denial of his motion to dismiss.[1] Gerald argues that, when an estate is open, tort claims related to that estate must be brought in probate court. Because the claims at issue herein were not known until after the probate court statute of limitations had passed, appellees have no recourse in probate court. As we hold their claims can be brought in civil court, we affirm the trial court's denial of Gerald's motion to dismiss.

## Facts and Procedural History

[2] Melvin Dillman and Rebecca Dillman were married for over thirty years. Rebecca had three sons: Gerald, Timothy, and Bradley (collectively, "Sons") from a previous relationship. Melvin had three daughters: Cheryl, Carla, and Rhonda (collectively, "Daughters") from a previous relationship. Melvin and Rebecca each executed wills with reciprocal provisions, stating, in pertinent part:

> In the event my said (spouse) shall predecease me, or shall die under circumstances making it difficult to determine the order of our deaths, then in such event I give, bequeath and devise all of said rest, residue and remainder of my estate, absolutely and in fee, unto my children and my (spouse's) children, namely GERALD F. SCOTT, BRADLEY F. SCOTT, TIMOTHY E. SCOTT, RHONDA KAY VANCE, CARLA ANN COOK and CHERYL SUE CARRICO, and their issue per stirpes who shall be living at the time of my death.

---

[1] Gerald's brothers, Timothy Scott and Bradley Scott, do not take part in this appeal.

\* \* \* \* \*

> The distributive provisions in this Will and in my husband's/wife's Will are to be considered a binding contract between us.  In the event of the death of one of us, the surviving spouse shall be prohibited from revoking, amending, or changing their Will with regard to the distribution of assets as it pertains to any children named under this Will.  Provisions that do not affect distribution of assets, may be changed by my surviving spouse.  Any change with regard to the distribution of assets on the part of surviving spouse shall be considered breach of our agreed upon contract made during our respective lifetime as to the disposition of our estate upon the death of both of us.

(Appellant's App. Vol. II at 11, 12) (errors in original).

[3]     Melvin died on January 26, 2014.  Following a diagnosis of Amyotrophic Lateral Sclerosis (ALS), Rebecca died on September 27, 2014.  On October 17, 2014, Rebecca's probate estate was opened ("the Estate").  Gerald and Rhonda served as co-executors.

[4]     During the probate proceedings, Daughters came to believe Sons had induced Rebecca to transfer assets to Sons at below fair market value.  Daughters believed the transferred assets included "real estate holdings, a thriving hardware business, a funeral home and adjoining land, a farm with eighty-three acres, two boats, two trailers, automobiles, and jewelry."  (Br. of Appellees at 9.)  At some point, Rebecca had granted Sons powers of attorney, which would have aided Sons in their ability to transfer ownership of the assets.  These

actions, if true, reduced the assets available to be distributed to the six children following Rebecca's death.

[5] On April 19, 2016, Gerald filed a final accounting in the Estate. The probate court set May 4, 2016, as the final filing date for any objections to that accounting. On May 2, 2016, Cheryl filed an objection to the Estate's final accounting. On May 31, 2016, the probate court noted the "estate should not remain open infinitum [sic]," and ordered Cheryl had until "June 24, 2016, to file suit in said estate." (Appellant's App. Vol. II at 86.) On June 20, 2016, Rhonda resigned as co-executrix of the Estate. On June 21, 2016, Rhonda also filed an objection to the final accounting.

[6] On June 22, 2016, Cheryl and Carla filed suit in civil court (hereinafter, "trial court") against Gerald, individually, for tortious interference with inheritance and tortious interference with contract. On June 23, 2016, Rhonda filed suit against Gerald, individually and in his role as Executor of the Rebecca's Estate, and against Bradley and Timothy. Sons all filed answers to the complaints. On November 7, 2016, Gerald requested the two cases be consolidated, and the trial court granted Gerald's motion. On February 24, 2017, Cheryl and Carla filed a motion for leave to amend wherein they included the allegations made by Rhonda and included the other two brothers (collectively, "Tort Claims"). Sons all filed amended answers.

[7] Through a series of recusals and requests for change of venue, Special Judge Joseph L. Claypool became the sitting judge in both the Estate and the Tort

Claims. On August 28, 2017, the trial court held a hearing "on all outstanding motions [in the consolidated cases.]"[2] (Appealed Order at 4.) The trial court entered findings of fact and conclusions of law. Therein, it denied Gerald's motion to reconsider its approval of Cheryl and Carla's amended complaint; dismissed Gerald, in his capacity as Executor, as a defendant in the Tort Claims; and denied Gerald's motions to dismiss the consolidated Tort Claims.

[8] The trial court supported its denial of Gerald's motion for dismissal of the Tort Claims by concluding that, although there was an open Estate in probate court, Daughters' allegations did not sound exclusively in probate. Additionally, the trial court concluded the probate court's permission for Cheryl to "file suit" permitted Cheryl to file a complaint outside the Estate. (Appellant's App. Vol. II at 86.) Conspicuously, the trial court noted "[l]imitations provided by the Probate Code have been addressed recently which call into question the efficacy of the protection provided by said limitations regarding fraud on the part of those owing a fiduciary duty [to] the aggrieved party."[3] (Appealed Order at 6.)

---

[2] Daughters suggest this hearing was "on all outstanding motions from the now-consolidated trial court actions and the probate case." (Br. of Appellees at 7.) As support for that assertion, they cite the copy of the appealed order in the Appendix. However, the appealed order designates the Estate with the appellation "ES-36," (Appellant's App. Vol. II at 12, ¶ 4), and the consolidated Tort Claims as "Cns-CT-161," (*id.* at 13, ¶ 24), and indicates: "The Court held a hearing and heard arguement [sic] on all outstanding motions of Cns CT-161 on August 28, 2017[.]" (*Id.* at 13, ¶ 28.) Thus, Daughters' assertion that the August 28, 2017, hearing was to consider motions brought in the Estate is not supported by the record.

[3] The trial court cites *Gittings v. Deal*, 84 N.E.3d 749 (Ind. Ct. App. 2017), *trans. granted*. Because transfer was granted, that Court of Appeals opinion was vacated. *See* Ind. Appellate Rule 58(A). It also cites *Matter of Guardianship of Hurst v. Hurst*, 84 N.E.3d 1222 (Ind. Ct. App. 2017), *opinion vacated on reh'g*, 93 N.E.3d 790 (Ind. Ct. App. 2018, *withdrawn from bound volume* (Feb. 2, 2018). Therefore, neither opinion is now pertinent

[9] Gerald argues the trial court erred when it denied his motion to dismiss pursuant to Indiana Trial Rule 12(B)(6) because Daughters failed to state a claim that can be addressed in the trial court. A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Babes Showclub, Jaba, Inc. v. Lair,* 918 N.E.2d 308, 310 (Ind. 2009). Review of a grant or denial of a motion based on Ind. Trial Rule 12(B)(6) is therefore *de novo*. *Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* We may affirm the judgment of the trial court on any legal theory supported by the evidence of record. *Meyer v. Meyer,* 756 N.E.2d 1049, 1051 n.4 (Ind. Ct. App. 2001).

[10] Gerald asserts Daughters' claims are either against the Estate or on behalf of the Estate; therefore, he argues, Daughters' claims must be brought in the Estate in probate court and not as separate Tort Claims in trial court. Daughters argue they are suing Sons and not the Estate; therefore, their claims sound in tort and are not required to be brought within the Estate.

[11] In *Minton v. Sackett*, 671 N.E.2d 160 (Ind. Ct. App. 1996), Dorothea Sackett and her husband Henry had executed a joint and mutual will. *Id.* at 161. This

nor precedential. However, it seems the trial court was influenced by these opinions in some fashion that called into doubt whether the probate court time limits accounted for instances of possible fraud.

mutual will split the estate evenly between their two children, James and Susanne. *Id*. Henry died, and Dorothea subsequently executed three other wills that left the bulk of the estate to James alone. *Id*. The last will, dated August 8, 1992, was executed two days after Dorothea granted James durable power of attorney and irrevocable power of appointment. *Id*.

[12] Dorothea died on March 2, 1994, and her last will was offered for probate. *Id*. On April 13, 1994, in the probate court, Susanne filed a claim alleging breach of contract and a complaint to resist probate, alleging Dorothea was of unsound mind, amongst other things. *Id*. Later in April, still in the probate court, Susanne filed a complaint against James "alleging that certain transfers of property by Dorothea constituted a breach of the contracts to devise contained in the joint and mutual wills of Dorothea and Henry." *Id*.

[13] On December 29, 1994, Susanne filed a tort complaint alleging James had interfered with her expectancy of inheritance "through the use of fraud (both constructive and actual), duress, undue influence, and conversion and that James was unjustly enriched by his actions." *Id*. James moved, pursuant to Indiana Trial Rule 12(B)(6), to dismiss Susanne's tort claim, arguing the court could not grant Susanne's requested relief because Indiana did not recognize the tort of intentional interference with inheritance. *Id*. The trial court, treating the motion as one for summary judgment, entered summary judgment for James. *Id*.

As a matter of first impression, our court looked for guidance from other jurisdictions and the Restatement (Second) of Torts § 774B (1979). *Id*. at 162. Our court noted other jurisdictions that had adopted this tort achieved balance by prohibiting the tort if remedy is available via a will contest. *Id*. Our court decided the best course of action was to balance the "competing goals of providing a remedy to injured parties and honoring the strictures of our probate court, which provides that a will contest is the exclusive means of challenging the validity of a will." *Id*. Applying that rationale to Susanne's claim, our court held that although the tort was available in Indiana, Susanne's will contest provided an adequate remedy, and we therefore affirmed the trial court's grant of summary judgment. *Id*. at 163.

Here, Daughters noted, at the hearing in August, that because of the nine-month time limitation for bringing a claim under the probate code, *see* Ind. Code § 29-1-14-1(d) ("[a]ll claims barrable under subsection (a) shall be barred if not filed within nine (9) months after the death of the decedent"), they did not have a remedy in the Estate. Unlike Susanne Minton, who had an active will contest claim in probate court, Daughters' objections were noted and served to object to the accounting but did not preserve their claims as to the assets transferred from Rebecca to Sons prior to Rebecca's death. Additionally, Daughters do not argue they are contesting the will—merely Sons' appropriation of property Daughters had expected to be included in the assets of the Estate. As Daughters are not contesting the will, but rather Sons' interference with inheritance, Daughters' claims are barred within the Estate

because they were not filed within nine months of the death of Rebecca. Therefore, Daughters do not have a remedy in the Estate. This is just the type of situation wherein Indiana has recognized the claim of tortious interference with inheritance ought to exist. *See Minton*, 671 N.E.2d at 162.

[16] As to the claim of interference with contract, Gerald relies on *Markey v. Estate of Markey*, 38 N.E.3d 1003 (Ind. 2015), and argues Daughters must prove breach of contract. Gerald notes that such a breach would have had to have been made by Rebecca; therefore, Gerald argues, this claim, too, had to be brought within the Estate. Daughters argue *Markey* is inapposite because they are not claiming breach of contract; rather, Daughters have filed a tort of interference with contract.[4]

[17] In *Markey*, David Markey brought a claim of breach of contract against the estate of his step-mother Frances when he discovered Frances had changed her will to disinherit him. Frances and David's father had executed mutual wills agreeing to not alter their wills for any reason. *Id*. at 1005. The recipients of equal amounts of the assets were to be David and Frances' granddaughter, Gillian. *Id*. However, after David's father died, David and Frances grew apart, and Frances changed the terms of her will. *Id*. Because of the distance between

---

[4] The elements of tortious interference with a contract are: "existence of a valid and enforceable contract, defendant's knowledge of that contract, defendant's intentional inducement to breach that contract, the absence of justification, and damages resulting from the breach." *Nat'l City Bank, Indiana v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997), *supplemented sub nom. Nat'l City Bank, Ind. v. Shortridge*, 691 N.E.2d 1210 (Ind. 1998).

David and Frances' family, David was not notified of Frances' death in person. *Id*. Frances' family merely published the notice in the paper. *Id*. As David was unaware of Frances' death, he did not make a claim against the estate within three months. *Id*.

[18] When he discovered Frances had died and had changed her will, David filed a claim of breach of contract within the estate. *Id*. at 1006. His claim was brought within nine months of Frances' death. *Id*. David argued his claim was as an "ascertainable creditor of the estate entitled to actual notice" but as notice was not provided, he was entitled to have nine months to make his claim. *Id*. The trial court found David's claim was not one recognized by the Probate Code; therefore, as a "non-claim" must be brought within three months of death, David has missed the time limit. *Id*. The Indiana Court of Appeals agreed. *Id*.

[19] On transfer, our Indiana Supreme Court disagreed. The Court noted for David "to be eligible for filing up until the nine-month bar, [David] must (1) have a 'claim' and (2) be a reasonably ascertainable creditor." *Id*. at 1008. The Court held the Probate Code defined a claim to include liabilities arising in contract and tort; therefore, David had a claim for purposes of the Probate Code because he was claiming a breach of contract. *Id*. However, the Court held the probate court had not heard sufficient evidence to determine whether David was a reasonably ascertainable creditor and remanded to the court to conduct a hearing "to determine whether David's claim in probate should proceed as timely filed." *Id*. at 1009.

Tort claim statutes of limitation have been extended in situations wherein no reasonable person could have known a claim could or should be made. *See, e.g., Umolu v. Rosolik*, 666 N.E.2d 450, 454 (Ind. Ct. App. 1996) (doctrine of fraudulent concealment tolls the statute of limitations), *reh'g denied*. However, "one of the basic tenets of public policy governing our Probate Code is the uniform and expeditious distribution of property of a decedent." *Kuzma v. Peoples Tr. & Sav. Bank, Boonville*, 132 Ind. App. 176, 183, 176 N.E.2d 134, 138 (1961), *reh'g denied*. Because of this basic tenet, claims against the decedent or the estate must be brought within the probate administration in order to ensure efficient distribution. *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385, 395 (Ind. Ct. App. 2003), *reh'g denied, trans. denied*. Those claims are further controlled by the probate code time limits wherein all claims must be brought to the notice of the personal representative in a timely manner so distribution may occur. *See* Ind. Code § 29-1-14-1 (claims against an estate must be brought within certain time limits or "shall be forever barred").

Unlike *Markey* or *Minton*, Rebecca did not change her will and disinherit Daughters. In *Markey* and *Minton*, as soon as the will was submitted for probate, the expectant heirs could discern the contract, in the form of a will, had been changed and were on notice to object. Here, Daughters knew Rebecca died, they knew the mutual wills had been executed, and they knew that will was the will submitted for probate. The fact the assets were no longer in Rebecca's Estate to be distributed as the will specified was not apparent until the accounting was filed, which occurred after the probate time limits had

lapsed. With the probate code public policy concerns in mind, it is unreasonable to extend the probate court time limits; rather, as both claims are viable Indiana torts, it is reasonable to permit Daughters' Tort Claims to proceed in the trial court.

# Conclusion

[22] As it pertains to inheritance, we have acknowledged that Indiana recognizes a party may make a separate tort claim, provided they cannot acquire adequate relief in the probate court. *Minton*, 671 N.E.2d at 162. Here, we have just that situation—Daughters cannot obtain adequate relief within the Estate because they were unaware of the loss of assets until after the probate code time limits had lapsed. It is against public policy to extend the probate court time limits. Therefore, Daughters have rightfully filed their claims as a separate tort action and the trial court did not err when it denied Gerald's motion to dismiss Daughters' Tort Claims.[5] Accordingly, we affirm.

[23] Affirmed.

---

[5] Gerald also argues the Tort Claims should be dismissed for improper venue pursuant to Trial Rule 12(B)(3). However, the reasoning underlying this argument is duplicative of Gerald's argument under Trial Rule 12(B)(6), and it fails for the same reasons.

Additionally, Gerald argues permitting Daughters to file this claim in trial court is a misinterpretation of the probate court's order to "file suit in said estate[.]" (Appellant's App. Vol. II at 86.) "When construing the language of a judgment the Court will attempt to read the provisions of the judgment so as to render all of them effective and not mere su[r]plusage." *Flynn v. Barker*, 450 N.E.2d 1008, 1009 (Ind. Ct. App. 1983), *cert. denied* 469 U.S. 934 (1984). As Daughters do not have a viable claim in the Estate, the probate court's order must be interpreted to mean Cheryl was allowed to file a separate cause of action by the specified date.

Riley, J., and Mathias, J., concur.